CHARLES H. DUNN *vs.* STATE BANK OF MINNEAPOLIS *et al.*

Argued Nov. 14, 1894.  Reversed Nov. 28, 1894.

No. 9012.

### Increase bank stock not paid for is not void.

1878 G. S. ch. 33, § 18, as amended by Laws 1881, ch. 77, § 3, provides that "no increase of capital stock shall be valid until the whole amount of the increase proposed is paid in." A banking corporation organized under the laws of this state increased its capital stock. A part of such increase stock was purchased by its president, who was also city treasurer, and paid for with city funds deposited in other banks in his name as such treasurer, and drawn out by checks in favor of the bank issuing the stock. The plaintiff is an innocent purchaser from him for value. *Held*, such stock is not absolutely void, and the plaintiff is not entitled to maintain an action to have the same canceled.

### Bank not chargeable with the fraud of a stockholder on selling his stock.

*Held*, after its president so purchased such increased stock, the bank is not responsible for his false and fraudulent representations made to plaintiff in selling the stock to him, and plaintiff cannot have the stock canceled by reason of such fraud in the sale to him.

### Laches a bar to relief.

It is conceded for the purpose of argument that the complaint alleges that the bank was insolvent, and it knew it was when its capital stock was increased, and that it was a fraud to issue and sell such increase stock. It appears by the complaint that the bank closed its doors, stopped payment, and made an assignment for the benefit of its creditors, eleven months after its president so subscribed for said stock, and five months after he sold it to plaintiff; that plaintiff did not discover such fraud until ten days before he commenced the action; but no effort to investigate the affairs of the bank or ascertain its condition appears. *Held*, as against creditors, it conclusively appears the plaintiff is guilty of laches, and is not entitled to have his stock canceled.

### Rights of creditors of the bank.

After the bank has thus become insolvent and closed its doors, the rights of creditors are vested, or they are in a position to assert those rights, and the court ought not, in a suit in which they are not parties, to cancel the stock certificates, and thereby destroy the evidence of their rights at least, unless it sufficiently appears that the same relief would be granted in a suit for that purpose in which they were parties.

### Complaint insufficient

*Held*, the complaint does not state a cause of action.

Appeal by defendants, the State Bank of Minneapolis and William J. Hahn as its assignee, from an order of the District Court of Hennepin County, *Henry G. Hicks*, J., made April 14, 1894, overruling the separate demurrers of each to the complaint of plaintiff, Charles H. Dunn.

The State Bank of Minneapolis was organized as a corporation prior to January 1, 1886, under the state banking laws, 1878 G. S. ch. 33, and amendments. Kristian Kortgaard was its principal stockholder. He was its president, a director and its general manager. The bank suspended payment June 22, 1893, and five days thereafter being insolvent made an assignment of all its property to George H. Fletcher under Laws 1881, ch. 148, in trust for the equal benefit of all its creditors. On August 12, 1893, Fletcher resigned his trust and Wm. J. Hahn was appointed in his stead and the assets transferred to him by the order of the District Court. The assets were not more than $100,000 and the debts not less than $500,000. The capital of the bank was $100,000 divided into shares of $100 each. It was at first $60,000 but on August 5, 1886, it was increased to $75,000 and on July 7, 1892, to $100,000.

The plaintiff, Charles H. Dunn on January 13, 1893, purchased of Kortgaard fifteen shares of this last increase stock and paid him $1,575 therefor. In March, 1894, Dunn commenced this action against the Bank, Kortgaard its president, and Hahn as assignee to cancel his stock for fraud and thereby escape his double liability to creditors under 1878 G. S. ch. 33, § 21. No creditor of the bank or any receiver having authority to enforce that statutory liability under 1878 G. S. ch. 76, was made a party to the action. *Allen* v. *Walsh*, 25 Minn. 543. The substance of the complaint is stated in the opinion of the court. Kortgaard being indicted for (and afterwards convicted of) embezzlement did not appear in the action. The other defendants severally demurred to the complaint, but the demurrers were overruled and they appeal.

*Jno. W. Arctander*, for appellants.

The plaintiff contends that two thirds of the holders of stock in the bank were not present at the meeting when it was resolved to increase the stock and that a vote of two thirds of the shares of the bank was not obtained for the increase. The articles of the

State Bank provide that such increase may be had upon a vote by a majority in number and amount of the stockholders. There is therefore nothing in this point, and the complaint in so far as it rests upon an alleged illegality in the increase of the capital stock must fall. The fact that stolen money paid for the stock did not vitiate the issue. There is no allegation in the complaint that the stock was not paid for, nor that such payment was not certified to the bank examiner, nor that the bank examiner did not issue his proper certificate. The proper certificate in fact was given by the bank examiner. 1878 G. S. ch. 33, § 18, as amended by Laws 1881, ch. 77, § 3. The complaint states that the stock was paid for to the bank by Kortgaard who purchased it, but that Kortgaard instead of obtaining the money honestly, stole it from the city of Minneapolis.

Fraud in the sale of the stock to plaintiff is no ground for its cancellation. There is no allegation that the defendant bank had any contract with the plaintiff; that it ever sold him the stock; that it ever obtained any money from him or that the money obtained from him was ever paid by Kortgaard to the bank; nor is there any allegation that the bank was in any manner a party to any fraud practised on plaintiff. The complaint fully shows that Kortgaard was the owner of the shares and that he sold them to plaintiff.

A stockholder cannot after permitting the depositors of the bank to rely upon his apparent ownership of the stock, repudiate his liability on the ground that he was induced to purchase the stock through fraudulent representations as to the financial condition of the bank. *Bissell* v. *Heath*, 98 Mich. 472; *Henderson* v. *Royal British Bank*, 7 El. & Bl. 356; *Daniell* v. *Royal British Bank*, 1 H. & N. 685; *Oakes* v. *Turquand*, L. R. 2 H. L. 325; *Stone* v. *City & County Bank*, 3 C. P. Div. 282; *Kingsford* v. *Merry*, 11 Exch. Rep. 577; *Wright's Case*, L. R. 7 Ch. 55; *Pugh & Sharman's Case*, L. R. 13 Eq. 566.

The English rule has been universally followed in our country. Beach Priv. Corp., pp. 1147, 1148; Morawetz Corp. (1st Ed.) § 595; Thompson Stockh. (1st Ed.) §§ 140–143; *Ogilvie* v. *Knox Ins. Co.*, 22 How. 380; *Upton* v. *Tribilcock*, 91 U. S. 45; *Chubb* v. *Upton*, 95

U. S. 665; *Payson* v. *Withers*, 5 Biss. 269; *Duffield* v. *Barnum W. & I. Works*, 64 Mich. 293; *In re Reciprocity Bank*, 22 N. Y. 9; *McHose* v. *Wheeler*, 45 Pa. St. 32; *Hager* v. *Cleveland*, 36 Md. 476.

The delay in bringing this action is such laches as will prevent giving the relief sought. The failure of the bank on June 27, 1893, must have fully informed plaintiff of the fact, that the representations made to him in January as to solvency and soundness of the bank were false. In waiting nine months or more thereafter before bringing this action, he slept upon his rights and cannot now be heard to assert them, if he has any. *Lawrence's Case*, L. R. 2 Ch. 412; *Kincaid's Case*, L. R. 2 Ch. 426; *Wilkinson's Case*, L. R. 2 Ch. 536; *Upton* v. *Tribilcock*, 91 U. S. 45; *Smith's Case*, L. R. 2 Ch. 604; *Denton* v. *Macneil*, L. R. 2 Eq. 352; *Peel's Case*, L. R. 2 Ch. 674.

*Geo. D. Emery* and *C. E. Vanderburgh*, for respondent.

The increase stock of which that purchased by plaintiff is a part, was never lawfully issued. It is a condition precedent to the validity of such stock that the amount of the increased stock should have been paid for in cash. See Laws 1881, ch. 77, §§ 1, 3.

The whole amount of the capital stock must be paid in and the certificate of the Superintendent of Banks must be made. A false assertion of compliance with this statute will not avail. The fact must exist and then it must be certified. *Veeder* v. *Mudgett*, 95 N. Y. 295; *Eaton* v. *Pacific Nat. Bank*, 144 Mass. 260.

If the city funds were wrongfully diverted and turned over to and mingled with assets of this bank with notice, and the bank turns out to be insolvent, the city has a right to recover the amount from the assets of the bank in preference to the general creditors without presenting any claim for allowance in insolvency. *Meyers* v. *Board of Education*, 51 Kans. 87, and cases; *Independent District* v. *King*, 80 Ia. 497; *National Bank* v. *Insurance Co.*, 104 U. S. 54. The issue of the certificates of stock was contrary to law and void; there was no value in the bank behind them, as the law requires, either for creditor or stockholder, and it was a fraud alike upon both. There was no increase of stock and no shares, and no stock passed to the plaintiff. *Grangers Life & Health Ins. Co.* v. *Kamper*, 73 Ala. 325; *Eaton* v. *Pacific Nat. Bank*, 144 Mass.

260; *Lincoln* v. *New Orleans Exp. Co.,* 45 La. Ann. 729; *American Tube Works* v. *Boston Machine Co.,* 139 Mass. 5.

If the stock was invalid, when and by what means was it made valid, so as to cut off plaintiff's right to rescind? It is claimed that by reason of the insolvency and assignment, the plaintiff is without a remedy. In view of the manipulations of the record by Kortgaard, his fraudulent management of the affairs of the Bank, of which he had complete control, and his representations made to the plaintiff as alleged, it is clear that the plaintiff or any man of ordinary prudence might have been deceived and kept in ignorance of the true state of affairs. This with the absence of notice is sufficient answer to the suggestion of laches. There is nothing to show any lack of diligence, and notice is denied. *American Tube Works* v. *Machine Company,* 139 Mass. 5.

The Bank was bound by the representations of Kortgaard respecting its condition, and the validity of the shares. They were the representations of the Bank itself. The plaintiff was not bound to investigate its records and books, to do which successfully might have required him to become an expert. *Union Bank* v. *Hunt,* 76 Mo. 439; 14 American Law Review, 199; *Foreman* v. *Bigelow,* 7 Central Law Journal, 430.

The issue of the certificates by the bank was an assertion by it that the conditions precedent had all been complied with, and that the stock was genuine and valid. *Allen* v. *South Boston R. Co.,* 150 Mass. 200.

The certificates in question must be construed to have been taken on the implied condition that they represented legal and valid stock in a solvent bank. *Stephens* v. *Follett,* 43 Fed. Rep. 892.

Stock issued in violation of law is void, but a distinction is made between cases wherein an estoppel may be held to have been created by the conduct of the holder of the void stock certificates, and cases where by the terms of the charter there can be no such estoppel. *Veeder* v. *Mudgett,* 95 N. Y. 295; *Banigan* v. *Bard,* 134 U. S. 291; *Scovill* v. *Thayer,* 105 U. S. 143; 14 American Law Review 200; *Duffield* v. *Barnum W. & I. Works,* 64 Mich. 295; *Winters* v. *Armstrong,* 37 Fed. Rep. 508; *Brant* v. *Ehlen,* 59 Md. 1; *Stephens* v. *Follett,* 43 Fed. Rep. 845.

Some courts seem to have gone to an extreme in protecting the rights of creditors against stockholders, in total disregard of the rights of the latter. The latter are as much entitled to protection upon established grounds of equity as creditors. A step in this direction, generally regarded with satisfaction, was made in the case of *St. Paul & M. Trust Co.* v. *Leck*, 57 Minn. 87.

CANTY, J. This action comes up on appeal from an order overruling a demurrer to the complaint. The complaint states that the State Bank of Minneapolis is a corporation organized under the banking laws of this state; that one Kortgaard was its managing officer, and during the time from 1889 until the assignment of the bank in 1893, by fraudulent means, and through irresponsible corporations organized by him for that purpose, he borrowed more than $300,000 of the funds of the bank, to secure which he gave it worthless security; that during the time he was thus embezzling the funds of the bank, and as a part of the same fraudulent scheme, he procured the capital stock of the bank to be increased from $75,000 to $100,000, which was done on July 7, 1892; that having bought from the bank 220 shares of this increased stock on August 14, 1892, he paid the bank for it $22,240, by checks drawn by him as city treasurer of Minneapolis on city funds on deposit in other banks in his name as such treasurer, which he then was; that said State Bank then well knew that the money so paid it was city funds, so embezzled by him, and that it then became, and still is, liable to said city for said funds; that on January 13, 1893, he sold to plaintiff fifteen shares of the same stock for $1,575, and, for the purpose of inducing plaintiff to purchase the same, falsely represented to him that all of said increased stock was lawfully issued and fully paid for, and that the bank was in good financial condition, sound and solvent, and that plaintiff believed and relied on said representations, and was by them induced to purchase said stock; that in fact said bank was then insolvent, and could not pay its depositors twenty five per cent. of their demands; that plaintiff had never paid for said stock so purchased by him, except with said stolen funds; that the bank then issued to plaintiff said fifteen shares of stock; that on June 22, 1893, the bank was hopelessly insolvent, and suspended payment, and on June 27th made an as-

signment for the benefit of its creditors, under the insolvency laws of this state, and the defendant Hahn is now the assignee; that the bank had full notice and knowledge at all times of all the foregoing facts, but plaintiff had no notice or knowledge thereof until ten days before the commencement of this suit.

The relief prayed for is that plaintiff have judgment against Kortgaard for the $1,575, paid him, and interest, and that the pretended membership of plaintiff in the corporation be declared null and void, and his name stricken from the roll of members. None of the creditors are made parties to the action.

The defendants Hahn and the bank each demur separately, on the ground that the complaint does not state facts sufficient to constitute a cause of action as to him, and appeal from an order overruling the demurrers.

It is contended by plaintiff that the act of issuing the increased stock to Kortgaard was an absolute nullity. 1878 G. S. ch. 33, § 18, as amended by Laws 1881, ch. 77, § 3, provides that "no increase of capital stock shall be valid until the whole amount of the increase proposed is paid in cash." Whether or not, under this statute, increase stock issued on credit or paid for by promissory notes, instead of cash, would be not merely voidable, but absolutely void, even in the hands of innocent purchasers for value, it is not necessary here to decide.

We are of the opinion that such rule is not applicable to this case. Kortgaard did not buy this stock on credit. The fact that he paid for the stock with stolen funds would only make his title voidable at the election of the bank, and he could convey a good title to an innocent purchaser. If plaintiff is, as he alleges, an innocent purchaser for value, without notice, he is protected and his title is good.

Neither the bank nor its assignee is in any manner responsible for Kortgaard's false representations to plaintiff when he sold plaintiff the stock.

It is claimed by plaintiff that the complaint alleges that the bank was insolvent, and knew it was, when it attempted to increase its stock, and when it issued the increase stock. It can hardly be spelled out of the complaint that the bank was then insolvent or knew it was. But conceding that the complaint does so allege, and

that it sufficiently appears, that increasing its stock and issuing such increase stock was a fraud on the persons purchasing that stock, including this plaintiff, does this entitle plaintiff to maintain this action to have his stock canceled? We are of the opinion that it does not; that, as against creditors, it is now too late for plaintiff to avoid his status as a stockholder. It appears from the complaint that the corporation is insolvent, and is only nominally interested in such status; that the real parties in interest are the creditors. Substantially, the only object of canceling such status is to avoid the personal or double liability to creditors, and for the purpose of this liability the assignee, Hahn, does not represent creditors. *Olson* v. *Cook*, 57 Minn. 552, (59 N. W. 635.) The plaintiff has not made the creditors parties to this suit; but the defendants appealing make no objection on this ground. But, even if the defendants waive that objection by failing to raise it by demurrer or answer, it does not follow that the courts should in this suit regard plaintiff's status as though there were no creditors, and proceed as though it were a case where the corporation was a solvent going concern, and destroy the evidence of the rights of creditors by canceling the stock certificate, and thus cloud and complicate those rights. The courts have refused to cancel records where it appeared that merely a nominal party, and not the real party in interest, was made defendant in the suit. See Pom. Rem. (2d Ed.) § 381. But conceding, for the purposes of this case, that plaintiff is entitled to maintain this action against the defendants appealing, if he is entitled to maintain it against the creditors, do the facts alleged entitle him to have his status as a stockholder canceled? We are of the opinion that they do not.

It is not necessary here to determine whether or not the stockholder who has been induced to become such by false and fraudulent representations, and who has remained such until the corporation has become insolvent, and creditors have acquired rights, is absolutely bound, as between him and the creditors, whether he is guilty of laches or not, as would seem to be the English rule (*Henderson* v. *Bank*, 7 El. & Bl. 356; *Oakes* v. *Turquand*, L. R. 2 H. L. 325; Thomp. Liab. Stockh. §§ 146–150), or whether he is bound only when he has been guilty of laches as would seem to be the rule adopted by some of the American courts (Thomp. Liab. Stockh. §

143). Under neither rule is plaintiff entitled to the relief he demands. If it is conceded that he is entitled to relief unless he has been guilty of laches, it sufficiently appears that he has been guilty. To say the least, a very different rule of diligence is required as between him and the creditors than is required as between him and the corporation. While there is no privity of contract between him and the creditors, and, as a mere stockholder, he is not an agent of the corporation, still he is to a considerable extent a member of the corporate family. He has a right, while it is a going concern, to inspect the books and investigate the affairs of the corporation. He has visitorial powers and duties which the creditor has not. He held himself out as a stockholder, and it is to be presumed after the lapse of time that creditors became such on the faith of his liability as a stockholder.

Under these circumstances, it is, to say the least, his duty to use a high degree of care and diligence to see that creditors are not misled and deceived by his conduct. What would constitute laches as between him and the creditors would not as between him and the corporation itself.

But it does not appear that plaintiff exercised any such high degree of care or diligence. He purchased his stock on the 13th of January, 1893, and the bank stopped payment June 22d, following. For more than five months while it was a going concern, presumably incurring debts, he held this stock without, so far as appears, having made any attempt to ascertain the condition of the bank. But his assignor, Kortgaard, had already held this same stock since the 7th of July, 1892, more than six months before he assigned it to plaintiff. As between him and the creditors, we do not see why plaintiff is not chargeable for laches as to these six months also, making eleven months from the time the stock was subscribed for until the concern stopped payment and closed its doors. It is not necessary to decide whether for every purpose he took the stock *cum onere*, and is chargeable, as between him and the creditors, with Kortgaard's participation in the fraud. He is at least chargeable with the laches of an innocent subscriber for eleven months.

While the corporation is a solvent, going concern, the rights of creditors are inchoate or in abeyance, and they are neither neces-

sary nor proper parties to such an action as this; but, when the concern becomes insolvent, the rights of creditors become vested, or they then come into a position to assert those rights.    Plaintiff can scarcely have any object in bringing this suit at this time, except to evade, cloud, or complicate those rights.    Until those rights are satisfied, plaintiff is not entitled to any relief; and, when those rights are satisfied, he may not need any, as the corporation itself may then have been wound up and ceased to exist.

The order appealed from should be reversed, and the demurrers sustained.    So ordered.

GILFILLAN, C. J., absent on account of sickness; took no part.

(Opinion published 61 N. W. 27.)