STATE ex rel. E. M. POPE v. GERMANIA BANK.[1]

ELIAS CRONSTADT v. GUSTAV WILLIUS.

July 3, 1903.

Nos. 13,486—(176).

**Reorganization of Bank—Estoppel.**

    The Germania Bank, organized under the state law, having a capital of $400,000, par value $100 per share, became insolvent, and made an assignment for the benefit of its creditors. Pending such proceedings, the bank was reorganized by the judgment of the district court under the provisions of Laws 1897, p. 109 (c. 89), the capital being reduced to $200,000. As a part of the reorganization scheme, those stockholders who paid up an assessment of $75 per share received stock to the amount paid, at par, in the reorganized bank, the other twenty-five per cent. of stock held by them being cancelled. All stock upon which the assessment was not paid was forfeited and cancelled.

    *Held*, an original depositor, who, in consideration of his claim against the insolvent bank, received, as part payment, time certificates of deposit, and a certificate of stock in the bank as reorganized, and who, without objection, permitted the bank to reopen and transact business for the period of two years, is estopped, against a receiver in insolvency of the reorganized bank, from repudiating the transaction upon the ground that the same was invalid or irregular.

In proceedings in the district court for Ramsey county upon the relation of E. M. Pope, as bank examiner, Gustav Willius was appointed receiver of Germania Bank, insolvent. Thereafter, in said proceedings, plaintiff Elias Cronstadt brought this action to enforce a claim of $100 against the assets of said bank in the hands of defendant

---

[1] Reported in 95 N. W. 1116.

Willius, the receiver. The case was tried before O. B. Lewis, J., who found in favor of defendant and disallowed the claim. From an order denying a motion for a new trial, plaintiff Cronstadt appealed. Affirmed.

*James E. Trask,* for appellant.

*Harris Richardson,* for respondent.

LEWIS, J.

The Germania Bank was incorporated under the laws of the state of Minnesota, and carried on a banking business in the city of St. Paul until January 4, 1897, when it became insolvent and made an assignment for the benefit of its creditors. The capital stock was originally three thousand shares, par value $100 each, and thereafter increased to four thousand shares. An assessment of $75 per share was made upon each of the four thousand shares of capital stock, but the owners of nineteen hundred fourteen shares failed and neglected to pay the assessment. The stock was thereupon offered for sale, but there were no bidders for it; and on August 9, 1897, the board of directors passed a resolution declaring such stock forfeited, and that it should be cancelled and deducted from the capital stock of the bank. The stock was accordingly forfeited, cancelled, and deducted from the capital stock, which was thereupon reduced to two thousand shares, par value $100 each.

While the estate was pending in the hands of the assignee, and in April, 1897, proceedings were begun in the district court for the reorganization of the bank under the provisions of Laws 1897, p. 109 (c. 89). A petition for that purpose was filed, representing that a majority of the creditors had agreed upon a plan of reorganization, and, in pursuance thereof, final order and judgment reorganizing the bank was entered on August 12, 1897, by which judgment of reorganization it was decreed that none of the stockholders present or past should in any way be released from any existing liability by reason of such reorganization and judgment. In contemplation of the reorganization proceedings, it was arranged to reissue, to the stockholders who should pay up the $75 per share assessment, new stock in the reorganized bank, equal to the par amount so paid, and to cancel the other twenty-five per cent. of the stock held by them. The assignee thereupon trans-

ferred to the bank so reorganized all of the property and assets of the bank. The reorganized bank continued to transact business as such until July 26, 1899, when it became again insolvent, and Gustav Willius was appointed receiver.

Before the bank became insolvent and made an assignment in 1897, appellant, Cronstadt, was a creditor to the extent of $450, which arose from the fact that he was a depositor in the bank to that amount; and, at the time proceedings were taken for the reorganization of the bank, he agreed with its creditors and stockholders to take and accept from the bank, when reorganized, in payment of his claim, one share of its capital stock, par value $100, and four certificates of deposit, payable nine, fifteen, twenty-one, and twenty-four months from the time of the reopening of the reorganized bank, with interest at the rate of three per cent. per annum. After the bank was reorganized, a stock certificate of one share, of the par value of $100, was duly issued and delivered to appellant, together with four certificates of deposit, as stated, which appellant continued to hold until after the reorganized bank was placed in the hands of Mr. Willius, as receiver, when he filed the certificates of deposit as a claim against the estate. This action was brought by appellant in the receivership proceedings for the purpose of having the $100 declared to be a valid and existing claim for that amount, with interest, against the reorganized bank estate. The trial court found the facts to be as above set forth, and denied the relief.

As we understand the position of appellant, it is that he has the right at this time to ignore all of the transactions which took place at the time of the reorganization and subsequent thereto, and to have the issue of the one share of stock to him declared void upon the ground that it was illegally issued. The principal argument is that, when the stockholders paid the $75 per share assessment, it was under an agreement that seventy-five per cent. of the stock they held should be reissued when the bank was reorganized—the other twenty-five per cent. to be cancelled upon such reorganization—and that such transaction was without authority. We must confess that we are unable to understand why the proceeding was illegal and void, although it may appear irregular and unusual. All the objections disappear, in view of the fact that the bank was reorganized in the proceedings commenced by the creditors for that purpose under the act of 1897, in which all

parties concerned had an opportunity to be heard, and in which a final judgment was entered, reorganizing the bank with a capital stock of $200,000. In the bank so reorganized, appellant accepted one share of stock, par value $100, and certificates of deposit in consideration and satisfaction of his original claim of $450, and afterwards ratified the transaction by filing a claim against the receiver for the amount represented by the certificates of deposit. If there ever was anything illegal in the manner in which the capital stock was reduced, the whole transaction was open to investigation at the time appellant entered into it. If the bank had prospered after reorganizing, and had paid dividends, there is no question but that appellant would be entitled to hold the certificate of stock and receive the dividends thereon.

According to the findings, which are supported by the evidence, appellant's certificate represented one of the two thousand shares issued by the bank as reorganized. During the two years, from August 16, 1897, when the bank reopened, to July 17, 1899, when it closed for the appointment of the receiver, it had transacted business to such an extent that on the last date it had out in certificates of deposit, besides those given on reorganization, $154,000, and $108,000 in new deposits, representing at least $262,000 of new business. Appellant became a stockholder in such bank, and, now that a liability attaches to the stock, he will not be heard to question the legality of the transaction which led up to and resulted in the reorganization. When the bank reopened and remained in business for the period of two years, those who transacted business with it and became creditors did so in view of the situation as they found it, relying upon the responsibility of the stockholders then existing. Under these circumstances, it is too late to ask relief, even if originally there had been some ground for it. Dunn v. State Bank of Minneapolis, 59 Minn. 221, 61 N. W. 27; Olson v. State Bank, 67 Minn. 267, 69 N. W. 904; Palmer v. Bank of Zumbrota, 72 Minn. 266, 75 N. W. 380.

There was no reversible error in the rulings of the court upon the introduction of evidence. The findings of fact are sustained by the evidence. The conclusions of law are supported by the facts as found, and the order appealed from is affirmed.

Order affirmed.