## R. L. HENDERSON, AS RECEIVER OF STEVENS & COMPANY v. S. P. CROSBY.[1]

July 13, 1923.

No. 23,513.

**Stockholder defrauded in purchase of stock must rescind before insolvency of incorporation.**

1. Although a stockholder was induced to enter into a contract for the purchase of stock by reason of false and fraudulent representations on the part of the officers of the corporation, if he was not diligent in discovering the fraud and repudiating the transaction before the corporation became insolvent and proceedings were commenced to sequester its property for the benefit of creditors, it is then too late to avoid the contract.

**Rights of company's creditors superior to stockholder's after appointment of receiver.**

2. The appointment of a receiver in a sequestration proceeding is in the nature of an equitable attachment of the property of the corporation for the benefit of its creditors. Their rights then become vested and their equities superior to those of a stockholder who might have rescinded a contract for the purchase of stock while the corporation was a going concern but who failed to do so.

[1]Reported in 194 N. W. 641.

Action transferred to district court for Ramsey county to recover $20,500. Plaintiff's motion for judgment on the pleadings was granted, Michael, J. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*Lightner & Young,* for appellant.

*Selover, Schultz & Mansfield,* for respondent.

LEES, C.

Defendant has appealed from a judgment for plaintiff entered on the pleadings.

The complaint alleged that defendant was the owner of 205 shares of the capital stock of Stevens & Company, a Minnesota corporation; that the par value was $100 a share; that on June 5, 1922, at the suit of a judgment creditor, plaintiff was appointed receiver of the corporation and directed to enforce the constitutional liability of its stockholders and had duly applied for an order for their assessment and the court had held them liable for the debts of the corporation; that the court had found that the corporation was a bankrupt with an estate valued at $140,000 and debts amounting to $390,000, and had levied an assessment of 100 per cent of the par value of the stock against the defendant and all the other stockholders and directed plaintiff to collect the assessments; and that defendant had refused to pay his assessment. Judgment was demanded for $20,500, the amount of the assessment.

The answer denied that defendant was a stockholder, but admitted the other allegations of the complaint. It stated that defendant's relations with the corporation were as follows: Early in July, 1921, the president of the corporation informed defendant that there was to be an issue of preferred stock and solicited him to buy some of it. To induce him to make the purchase, a written statement which purported to show the financial condition of the corporation was exhibited. It shows that the assets of the corporation were 3 times the amount of the liabilities. It was represented that the statement was taken from the books of the corporation and was true; that the business of the corporation was prosperous; that it owned bonds worth $350,000 and would maintain a bid on the preferred stock of not less than $95 a share and purchase

it from defendant at any time and pay him 95 per cent of its par value. All this was false. The corporation was hopelessly insolvent. It owned few if any bonds not already pledged to secure the payment of corporate indebtedness equal to the full value of the bonds. The books then and at all times thereafter were so kept that an inspection would not have enabled defendant to discover the falsity of the representations. He believed and relied upon them and on July 16 purchased 195 shares of the preferred stock, paying for the stock in bonds of the value of $19,500, and on September 6 purchased 10 shares of common stock, paying for it in bonds of the value of $1,000. At various times thereafter he requested the corporation to repurchase the stock pursuant to its agreement, but it refused to do so. He remained in ignorance of the falsity of the representations until shortly before April 14, 1922. Learning then of their possible falsity, he delivered his stock certificates to the officers of the corporation and demanded the return of his bonds or payment of their value. His demand was refused and the certificates were returned. The answer concluded with an allegation of defendant's willingness and ability to surrender the stock. Plaintiff replied, denying the allegations of new matter and alleging that in bankruptcy proceedings in the United States district court a receiver of the corporation had been appointed and later he moved for and was granted judgment on the pleadings. In granting the motion the court said that defendant had taken no steps to rescind the transaction until 3 days after the bankruptcy.

The facts stated in the answer would entitle defendant to rescind the contract for the purchase of the stock if he and the corporation were the only parties concerned. He was the victim of a fraud perpetrated by its officers. He might have sued for a rescission at any time after the fraud was perpetrated. He did not learn of the fraud until April 14, 1922. Then the rights of creditors had intervened, and the question to be decided is whether his equities are superior to theirs. His explanation for his failure to discover the hopeless insolvency of the corporation is that the books were kept in such a manner as to conceal its true financial condition. It is doubtful whether that fact would excuse his failure to discover the

fraud. Olson v. State Bank, 67 Minn. 267, 69 N. W. 904; Lantry v. Wallace, 182 U. S. 536, 21 Sup. Ct. 878, 45 L. ed. 1218. When he requested the corporation to buy his stock pursuant to its agreement and it refused to do so, he had warning that all was not well. If he had been diligent, he would have acted then instead of waiting until the corporation became a bankrupt. We think the allegations of the answer fall short of showing the exercise of reasonable diligence in an effort to get at the facts. All the authorities agree that one in defendant's position must act promptly or he will lose his right to relief. There is a valid reason for the rule. When a stockholder rescinds his contract for the purchase of stock, he becames a creditor, and, instead of contributing to the fund from which creditors are paid, he shares in it. If he neglects to lay aside the garb of a stockholder before the corporation becomes insolvent and proceedings are instituted to sequester its property for the benefit of its creditors, it ought to be held that it is then too late to assume the role of a creditor. Newton Nat. Bank v. Newbegin, 74 Fed. 135.

The appointment of a receiver in a sequestration proceeding is in the nature of an equitable attachment whereby the court acquires the custody of the property of the corporation for the benefit of its creditors. Farmers L. & T. Co. v. Minneapolis E. & M. Works, 35 Minn. 543, 29 N. W. 349; Greenfield v. Hill City L. L. & L. Co. 141 Minn. 393, 170 N. W. 343. The rights of the creditors then become vested and may be enforced against those who have allowed themselves to appear as stockholders, and are superior to those of a stockholder who has failed to assert his right of rescission against the corporation while it was a going concern. Dunn v. State Bank of Minneapolis, 59 Minn. 221, 61 N. W. 27; Bartlett v. Stephens, 137 Minn. 213, 163 N. W. 288; Olson v. State Bank, supra; Scott v. Deweese, 181 U. S. 202, 21 Sup. Ct. 585, 45 L. ed. 822. Another reason for the rule is that the creditors are presumed to have extended credit or to have refrained from enforcing their demands on the faith of the showing as to stockholders which is made by the books of the corporation, and, if one of two innocent persons must suffer, the loss should fall upon him whose conduct induced the other to act or refrain from acting.

Viewing the answer in the light most favorable to defendant, it must be held that he should have taken steps to repudiate his contract when the corporation failed to take his stock off his hands as it had promised, and that he comes into court too late to get relief. This conclusion is sustained not only by our own decisions but those in other jurisdictions as well, and by the text writers. The cases are collated in the notes to Newton Nat. Bank v. Newbegin, 33 L. R. A. 727; Gress v. Knight, 31 L. R. A. (N. S.) 900; Chamberlain v. Trogden, 16 Ann. Cas. 177, and in 7 R. C. L. 214 and 14 C. J. pp. 598-602. See also Morawetz, Priv. Corp. § 595; Thompson, Corp. § 737; Cook, Corp. § 164.

Judgment affirmed.