CHIPPEWA COUNTY STATE BANK, BY A. J. VEIGEL, v.
PHILLIP KIEF.[1]

October 21, 1927.

No. 26,185.

**Finding sustained that officers of bank practiced fraud in sale of its stock.**
    1. The evidence supports the finding that, in the sale of bank stock owned by the payee of the note in suit (given in part payment thereof), the officers of the bank, who made the sale to the maker, practiced fraud and deception by means of false and fraudulent representations and concealment.

**Partial reliance on false representations good defense to note.**
    2. In order to constitute a defense to a promissory note so obtained, it is not necessary to show that the maker relied solely upon the false and fraudulent representations. It is sufficient if he in part relied thereon.

Corporations, 14 C. J. p. 707 n. 20; p. 713 n. 6.
Fraud, 26 C. J. p. 1165 n. 47.

---

See 3 R. C. L. 386; 1 R. C. L. Supp. 817.

Plaintiff appealed from an order of the district court for Chippewa county, Qvale, J., denying its motion for a new trial. Affirmed.
*C. D. Bensel* and *C. A. Fosnes,* for appellant.
*Daly & Barnard,* for respondent.

HOLT, J.
Appeal by plaintiff from an order denying a new trial after findings in favor of defendant.

The suit is upon a promissory note executed by defendant to the Chippewa County State Bank, now in the hands of the state superintendent of banks for liquidation. The defenses were (a) want of consideration, and (b) that the note was obtained by

[1]Reported in 215 N. W. 833.

means of fraud and deception practiced on defendant by means of false and fraudulent representations and concealment by the payee. The court found both defenses true, and allowed a counterclaim in the amount of $455, being the balance to his credit in his deposit account at the time the bank went into liquidation, which balance the superintendent of banks applied upon the note in suit without defendant's consent.

It might be difficult to justify the finding that the note was without consideration, but since we are of the opinion that there is evidence to support the finding that it was procured by the fraud and deceit practiced on the maker by the payee, no recovery can be had thereon, and it will not be necessary to consider the finding as to consideration.

The evidence disclosed this situation: The bank had operated at Montevideo for many years and had a good reputation. Lloyd G. Moyer was its president. Lycurgus R. Moyer, a brother, during his lifetime, was a large shareholder. These two and Sumner Moyer, son of Lycurgus, the defendant's son-in-law, who was the vice-president of the bank, owned and controlled the Moyer Manufacturing Company of Montevideo, the paper of which to the amount of over $70,000 the bank held, when a state bank examiner insisted that Lloyd resign as president of the bank and turn over to the examiner for the use of the bank the stock he had therein, being 116 shares. The inference is that the examiner also insisted that the 150 shares owned by Lycurgus when he died should take the same course; and Sumner Moyer, who was administrator of his father's estate, obtained the consent of the heirs to so doing, and this stock was also turned over. The evident intent of the bank examiner and the officers of the bank was that the stock of the two Moyers thus obtained should be sold and the proceeds devoted to take care of the worthless or doubtful paper held by the bank, particularly that of the Moyer Manufacturing Company. The bank examiner delivered the stock to Freeberg, the cashier of the bank, and charged him with its safe-keeping.

It appears that Freeberg first solicited defendant to buy of this stock. The claim is that Freeberg, in the hearing of Sumner Moyer,

represented to defendant that it was worth $200 a share. Defendant shared with others interested in the bank the idea that it was desirable to have the stock of the bank owned by residents of the town, and also that a controlling interest should be in his family, since Sumner Moyer, his son-in-law, was vice-president and active manager of the bank. Defendant had a $21,100 mortgage, including accrued interest, which he had received when he sold his farm, and $2,600 in liberty bonds. He was induced to part with these in order to pay for 151 shares of the bank stock mentioned at $200 per share, the note in suit for $6,500 making up the balance.

The question is whether the court was justified in finding that the bank practiced fraud and deceit in procuring the note or, in other words, in the sale of the stock which was the basis for the making of the note. The officers of the bank, Freeberg and Sumner Moyer, made the sale. The stock then was owned by the bank. It had been given or surrendered to the bank, through the instrumentality of the bank examiner, for the purpose of sale, the proceeds to be used in wiping out the poor paper of the Moyer Manufacturing Company in the bank.

Defendant testified that in making the deal he relied on the statement of Freeberg that the stock was worth $200 a share, and on the statement of Sumner Moyer that the bank was in good condition. Knowing that these two men had had the management of the bank for a long period and must know its actual condition better than anyone else, he would naturally place great confidence in their representations. The court could assume that defendant would be likely to place great reliance upon the statements of his son-in-law. And, if fraudulent and false, the fact that they were made by a near relative would not weaken defendant's claim for redress, for it can hardly be contended that Freeberg and Sumner Moyer did not act for the bank in the deal with defendant. Defendant had been a farmer, but had sold his farm and was then living in Montevideo working for a railroad company packing the trucks of railway cars with grease. He was not a man of business or banking experience, and no doubt both Freeberg and Sumner Moyer

knew that. That he relied in part upon the reputation of the bank and had opportunity to investigate does not preclude relief if he also relied upon false representations made to him by the officers or agents who acted for the bank.

Plaintiff places a great deal of significance upon what the minutes of a meeting of the directors of the bank state touching the sale of the stock and the replacement of the poor Moyer paper in the bank, claiming that defendant was present and knew the contents of the resolutions then passed, which would disclose that all was not well with the bank. Even if the court thought defendant was present, the conclusion could well be reached that he did not understand the bearing of the "whereases" and the "resolves" recited in the minutes upon either the value of the stock or the represented condition of the bank.

It is now conceded that the bank was insolvent when the transaction with defendant was started and concluded. It cannot well be imagined that Freeberg and Sumner Moyer, who had the active management of the bank, could be in such ignorance of the true state of affairs that they could in good faith state that its stock was worth twice its face value, or that the bank's financial standing was good. Although the bank received from the deal with defendant over $23,000 in cash, in a few months an assessment of 80 per cent was made upon the stockholders. But that did not suffice, for shortly a reorganization became necessary, and that notwithstanding it could operate only until May 29, 1924, when the state superintendent of banks took it over. It may well be that Freeberg and Sumner Moyer were so optimistic that they did not fully realize the falsity of their representations and did not actually intend to defraud defendant; but their statements were so grossly false that to one in defendant's position, who relied thereon in making the deal, it constituted legal fraud and a good defense to a suit upon a contract originating in the fraud.

Plaintiff cites Dunn v. State Bank of Minneapolis, 59 Minn. 221, 61 N. W. 27; but the distinction is that the officer there was selling his own stock, and further the action was in equity by the vendee

to rescind, while this is an action by plaintiff to enforce a contract, towit, the note obtained in the transaction by the fraudulent practices of the payee. This case is also distinguishable from that of Meland v. Youngberg, 124 Minn. 446, 145 N. W. 167, Ann. Cas. 1915B, 75, in that this defendant, as the representatives of the payee of the note well knew, did not undertake to investigate the condition of the bank or the value of its shares and did not have the ability so to do, but relied on their statements in that regard. However, the opinion recognizes the principle applicable to the instant case, that if a party makes a contract, relying in part upon his own knowledge and in part on fraudulent and false representations regarding the subject matter of the contract by the other party thereto, he may maintain an action in deceit, and of course successfully defend when sued on the contract thus obtained.

See also Kraus v. National Bank of Commerce, 140 Minn. 108, 167 N. W. 353; Old Colony Life Ins. Co. v. Moeglein, 165 Minn. 117, 205 N. W. 885. Ludowese v. Amidon, 124 Minn. 288, 144 N. W. 965, touches the point that representations as to the value of shares of bank stock by the chief officer and active manager of the bank in making a deal may be relied upon by the adverse party and is not mere trade talk.

We are of the opinion that the evidence supports the finding that the note was obtained by the payee from defendant by means of false and fraudulent representations as to the value of the shares of stock and the condition of the bank. That being so, there could be no recovery by plaintiff. And the conclusion of law was right that the note should be canceled.

Plaintiff assigns (but does not argue in the brief or orally) error upon the conclusion of law "That defendant have and recover the sum of $455." No application was made to the court below to modify this conclusion. So that defendant may not because of this litigation obtain a preference over others who had deposit accounts in the plaintiff bank when it was taken over for liquidation, the entry of judgment should be ordered in the form of an allowed claim against the bank upon the same basis as the allowed claims

of other depositors will stand, should the assets not suffice to pay depositors in full.

The order is affirmed without prejudice to apply to the court below for the modification suggested.