NATIONAL GUARDIAN LIFE INSURANCE COMPANY v.
SCHWARTZ BROS. INC. AND OTHERS.
NATHAN LIEBERMAN, INTERVENER.[1]

April 28, 1944.

Nos. 33,636, 33,672.

[1]Reported in 14 N. W. (2d) 347.

*Ell M. Roston,* for appellants.
*Doherty, Rumble, Butler, Sullivan & Mitchell,* for respondent.
*John A. Burns* and *Solly Robins,* for Maurice W. Stoffer, receiver.
*Robins, Davis & Lyons,* for intervener.

STREISSGUTH, JUSTICE.

This is an action to foreclose a $55,000 real estate mortgage dated December 19, 1928, given by defendant Schwartz Bros. Inc. upon a building then owned and used by it as a laundry and dry-cleaning establishment. The plaintiff also holds a chattel mortgage upon most, though not all, of the machinery and equipment in the building. No part of the principal debt was paid prior to maturity of the mortgage on December 19, 1938, and payment of the mortgage was extended on January 7, 1939, under an agreement providing for installment payments. The defendant Esther Schwartz was

president and the defendant Edward W. Schwartz the secretary of the mortgagor on the date of the extension agreement. The defendant General Cleaners & Launderers, Inc. claims to be the present owner of the mortgaged building and the laundry plant and business. The proceedings are based .on Minn. St. 1941, § 580.09 (Mason St. 1927, § 9610), foreclosure not being sought for the entire mortgage debt, but only for installments of principal which have matured under the extension agreement and for certain insurance premiums and taxes paid by plaintiff.

Upon commencement of the action on January 30, 1943, and pending hearing on an order to show cause then issued, a temporary receiver was appointed *ex parte* upon a showing, by verified complaint, that the mortgagor had failed to pay taxes and insurance premiums, had failed to maintain adequate heat in the premises during subzero weather, and had permitted the machinery and equipment to freeze up, resulting in the bursting of water pipes.

Upon the hearing on the order to show cause on February 6, other defaults and waste were disclosed, such as failure to pay state and federal social security taxes and water and power charges, to maintain window lights, and to repair the roof. It was also shown that the laundry had not been operated for a week prior to the appointment of the receiver, although the receiver had resumed operations on February 1. At this hearing the defendants did not oppose the receiver's appointment or his operation of the laundry, but advised the court that they were negotiating with the owner of a competing laundry, with the view of a possible sale to or consolidation with such competitor. The court continued the temporary receivership until February 13.

On February 12, the receiver filed his preliminary report, and, at the hearing on the following day, supplemented it by oral statements as to the status of the property and the expense incurred in protecting, preserving, and operating the same. None of the defendants appeared. An order was entered continuing the receiver in possession, with the right to continue operations and to incur all reasonable and ·necessary expenses incident thereto. The hear-

ing on the original order to show cause was continued to March 13.

On March 7, plaintiff filed an affidavit of default on the part of all the defendants. On March 12, the receiver filed a report for February showing an operating loss of approximately $500 a week, and requested further instructions regarding the continuance of the laundry operations. On March 13, the matter was again brought up for hearing, at which defendants appeared and requested a continuance to March 18 to permit further negotiations to refinance the laundry business. Defendants made no motion to vacate the default, merely reserving the right to object to the court's order appointing a receiver and its order continuing the receiver's operation of the laundry. At the adjourned hearing on March 18, defendants advised the court that negotiations to refinance had failed but that they still hoped to obtain financial help from another laundry. They questioned the propriety of the appointment of a temporary receiver of all the property on the premises, some minor items of which were not described in either the real estate or chattel mortgage; but the court pointed out their failure to maintain heat in the mortgaged premises and the fact that all the property had been placed in the exclusive control of the receiver to avoid dual control.

On March 20, plaintiff proved up its case as a default; but, before findings were made, defendants procured an order to show cause, dated March 24, appended to which was a motion to set aside the appointment of the receiver and the default of defendants, an affidavit of merits, and a proposed answer. Because the proposed answer admitted default in the payment of installments on the mortgage note, as did defendants' counsel in open court, the findings and order for judgment of foreclosure and sale were nevertheless made and entered on March 29. On April 27, defendants, by other counsel, dismissed their motion to set aside the appointment of the receiver and for leave to answer. The decree of foreclosure was entered on March 30 and a foreclosure sale held on May 15, 1943.

Nothing further developed until May 27, when defendants made a new motion asking (1) for vacation of the order appointing the temporary receiver; (2) for an order vacating the judgment of foreclosure and the order confirming the foreclosure sale; (3) for an order granting defendants leave to file an answer; and, finally, (4) for an order discharging the receiver and requiring him to account. This motion was heard on June 14, when a further showing was made by plaintiff as to the waste committed by the mortgagor prior to the receivership. The court denied the motion by order dated June 28, as hereinafter explained.

Up to March 24, defendants had not only acquiesced in the receivership, but had contributed to the expense of maintaining laundry operations. Throughout the proceedings, defendants had been given repeated opportunities to clear up their financial difficulties with plaintiff and their other creditors, including the taxing authorities and defendants' employes. One of these employes, Nathan Lieberman, the intervener, had entered judgment against the defendant corporations on January 30, 1943, a few days prior to the initial appointment of the temporary receiver. An execution on this judgment had been returned unsatisfied on February 6. On June 2 and prior to the hearing on defendants' motion of May 27 noticed for hearing on June 5, Lieberman made application for an order to show cause, returnable on June 5, requiring both plaintiff and defendants to show cause why Lieberman should not be permitted to intervene and why a general receiver of the defendant corporations should not be appointed. In opposing the granting of such relief, the defendant corporations admitted the entry of the Lieberman judgment, but claimed that it was improper for them to pay it because of the order of January 30 restraining them from transferring their property. On June 28, 1943, an order was entered denying defendants' motion, but deferring for 30 days a decision upon Lieberman's motion accompanying the order to show cause procured by him, during which time defendants were granted an opportunity to take steps to refinance or otherwise dispose of the mortgage indebtedness and to satisfy and discharge the Lieberman judg-

ment and the claims of any other creditors. During the 30-day period so allowed and on July 14, defendants appealed from that part of the order of June 28 denying their motion of May 27. The appeal is here as case No. 33,636.

On July 26, at defendants' instance, the court issued an order to show cause why all proceedings in connection with the claim of Lieberman should not be stayed until defendants' appeal of July 14 was determined by this court. The order to show cause was accompanied by a motion of defendants asking for a stay of proceedings. This motion was heard before the court on July 28. On August 3, 1943, the court entered an order denying defendants' motion and granting Lieberman leave to intervene. The same order appointed Maurice W. Stoffer general receiver of the defendant corporations and of all their property. This is the order appealed from in case No. 33,672.

The court attached a memorandum to its order of August 3, parts of which we quote:

"Throughout the proceedings defendants have been given repeated opportunity to clear their financial difficulties with plaintiff and other creditors, secured and unsecured. To prevent complications arising from judgments, executions and other liens of several of these creditors as well as foreclosure of the chattel mortgage held by plaintiff on the major portion of the laundry machinery and equipment, the court, as a part of its January 30, 1943, order, temporarily restrained the creditors from proceeding to collect their claims by levy and execution on the assets of the defendants, and has continued that temporary restraining order in effect. Being of the view that the defendants have not made a bona fide effort to clear their financial difficulties with either the mortgagee or the other creditors, and feeling that it is no longer fair to those creditors to restrain them from realizing on their claims, the court has decided to appoint a general receiver with the usual powers of such office."

■ Keeping in mind that the foreclosure was sought by plaintiff merely for installments of the principal mortgage debt which had

matured and for taxes and insurance premiums paid by it and that foreclosure for the entire mortgage debt was not sought, it is clear that the court was well within its discretion in appointing a temporary receiver *ex parte* and *pendente lite,* by its order of January 30, and in thereafter confirming and continuing such receivership. In urging the contrary, defendants call attention to Minn. St. 1941, § 559.17 (Mason St. 1927, § 9572), and to numerous decisions of this court to the effect that a receivership, pending foreclosure, will be sustained only when necessary to prevent waste and preserve the property, and then only when the waste is of such a character as to endanger the adequacy of the security. Under the statute referred to, the mortgagor, having the legal title, is normally entitled to remain in possession until his title is divested by expiration of the time for redemption from a foreclosure sale; but if, in the application of established principles of equity, and consistently with the legal title remaining in the mortgagor, the court finds it necessary to intervene by taking possession of mortgaged premises through a receivership, the statute will not prevent its doing so. Notwithstanding the statute, "the legal right of the mortgagor to the possession of the mortgaged premises prior to foreclosure is still subject to the customary equitable jurisdiction of the court to appoint a receiver, when that becomes necessary for the protection of such equitable rights of the mortgagee as do not rest upon the common-law principle of a legal estate transferred by the mortgagor." Lowell v. Doe, 44 Minn. 144, 148, 46 N. W. 297, 299.

In the instant case, there was not only default in the payment of installments of the principal and in the payment of taxes and insurance premiums, but actual cessation by the mortgagor of its use of the property as a laundry, and such serious neglect and waste in the maintenance and upkeep of the building as amply to justify the intervention of the court by order appointing a temporary receiver. Furthermore, having from the start fully acquiesced in the appointment of the temporary receiver for a period of several months at least and having actually contributed to the expense of

the operation of the laundry by the receiver, defendants are in no position to urge the impropriety of the original temporary receivership.

■ Insofar as the order of June 28 refused to set aside defendants' default, the judgment of foreclosure, and the sale thereunder, this was a matter clearly within the court's discretion. 3 Dunnell, Dig. & Supp. § 5012. On the record, it would seem that any other order would have been an abuse of the court's discretion.

■ The appointment of a general receiver on motion of a judgment creditor with an execution returned unsatisfied stands on an entirely different footing than the appointment of a receiver during foreclosure proceedings. When facts are admitted or proved which show a right to sequestration under Minn. St. 1941, § 316.05 (Mason St. 1927, § 8013), and there is no defense, the appointment of a receiver is a matter of right. 2 Dunnell, Dig. & Supp. § 2157; State v. Bank of New England, 55 Minn. 139, 56 N. W. 575. The appointment of a receiver in such case is in the nature of an equitable attachment of the property of the corporation for the benefit of all its creditors, both simple and secured. 2 Dunnell, Dig. & Supp. § 2157; Henderson v. Crosby, 156 Minn. 323, 194 N. W. 641; Parten v. Southern Colonization Co. 146 Minn. 287, 178 N. W. 744. After the action is commenced, it passes from the control of the plaintiff to that of the court, and the defendant cannot thereafter abate the action or prevent the appointment of a receiver by tendering or making payment of plaintiff's claim if the claims of other creditors remain unpaid. Parten v. Southern Colonization Co. *supra*. So, in the case before us, defendants' proposal to have the Lieberman judgment paid with funds in the hands of the temporary receiver was properly disregarded by the court in making its order of August 3 appointing a general receiver.

Affirmed on both appeals.