In re SCHWARTZ BROS., Inc., et al.

Nos. 9229, 9230.

District Court, D. Minnesota,
Third Division.

Feb. 8, 1945.

[black rectangle]

William P. O'Brien, of St. Paul, Minn., and C. J. Wagner and Charles H. Halpern, both of Minneapolis, Minn., for trustee in bankruptcy.

John A. Burns, of St. Paul, Minn., and Solly Robins, of Minneapolis, Minn., for receiver.

NORDBYE, District Judge.

A detailed history of this proceeding may be found in National Guardian Life Ins. Co. v. Schwartz Bros., 1944, 217 Minn. 288, 14 N.W.2d 347. The facts necessary to understand the instant proceedings are as follows: On January 30, 1943, the mortgagee of the debtors' real estate commenced an action in State Court to foreclose the mortgage on account of the non-payment of certain past due mortgage installment payments and by reason of the fact that certain insurance premiums and taxes had been paid by the mortgagee. The action was instituted pursuant to Mason's Minn.Stat.1927, § 9610. The decree of foreclosure was entered on March 30, 1943, and the foreclosure sale was held on May 15, 1943. A temporary receiver was appointed ex parte when the mortgage foreclosure action was commenced, and by virtue of subsequent hearings and court orders, the temporary receivership was continued until August 3, 1943. The debtors' motion of May 27, 1943, to vacate the foreclosure and to set aside the order appointing the temporary receiver was denied on June 28, 1943, and that denial was sustained by the Minnesota Supreme Court on April 28, 1944, in National Guardian Life Ins. Co. v. Schwartz Bros., supra.

While the appeal to the Minnesota Supreme Court was pending, the court granted the petition of one Nathan Lieberman to intervene, and at the same time—August 3, 1943—appointed Maurice W. Stoffer as general receiver for the debtor corporations and all their property. It appears that Lieberman was an employee of the debtors and obtained a judgment against them several days prior to the appointment of the temporary receiver on January 30, 1943. An execution which he had levied under his judgment was returned unsatisfied on February 6, 1943. He sought to intervene and to obtain the appointment of a general receiver several months thereafter

under Section 8013, Mason's Minn.Stat. 1927, and finally was granted such permission on August 3, 1943. Section 8013 provides:

"Sequestration—Receiver—Distribution— Upon complaint of a person obtaining judgment against a corporation or his representatives, made after the return unsatisfied of an execution issued thereon, the Court may sequestrate the stock, property, things in action and effects of such corporation, and appoint a receiver of the same, and upon final judgment upon any such complaint the Court shall order the property remaining, or the proceeds thereof, to be disposed of under its direction, proportionately in the following order:

"1. In payment of the costs and expenses of the receivership.

"2. Debts due the United States and the State of Minnesota, if any.

"3. Taxes and assessments, if any.

"4. Claims duly proved and allowed of employees sustaining injury in the course of their employment and entitled to compensation under the provisions of part II, Chapter 23-A, General Statutes 1923, provided that claims under this subdivision of this section shall not be allowed if the corporation carried workmen's compensation insurance as provided by law at the time the injury was sustained.

"5. Claims duly proved and allowed of clerks, servants or laborers for services performed within three months preceding the appointment of the receiver if any.

"6. Other claims duly proved and allowed.

"After payment of the expenses of receivership and claims of creditors duly proved, the remainder, if any there be, shall be distributed pro rata among the stockholders proving themselves entitled thereto."

Shortly after the general receiver was appointed, the State District Court authorized him to sell the debtors' property. Apparently, the time to redeem from the mortgage foreclosure would elapse on May 15, 1944, and in order to preserve the debtors' equity, the sale had to be made before that time. At the time the authorization to the receiver to sell the debtors' property was given, debtors' counsel were present and made no objection to such authorization. However, on May 11, 1944, the debtor corporations, through certain officers, filed in United States District Court for Minnesota

voluntary petitions in bankruptcy on behalf of these debtor corporations and were on the same day duly adjudged bankrupts. On May 11, 1944, this Court on application of the attorney for the bankrupts issued an order restraining the receiver from selling or disposing of the assets of the estate and stayed all proceedings in State Court until a hearing could be had on said motion. After the hearing, and on May 13, 1944, the restraining order was vacated and set aside by this Court. Thereupon, the receiver proceeded to, and did, sell the assets in his possession according to the authority granted him by the State Court's previous order. The sale was confirmed on May 29, 1944. On July 28, 1944, the Court allowed claims and directed payment of preferred wage claims. These payments were made from the receipts of the sale of the estate's assets. It now appears that, outside of the payments which have been made to preferred wage claimants and certain moneys which are to be paid to Mr. Lieberman, the intervener, the entire balance of the estate has been allowed to counsel and to the receiver for fees and expenses in connection with the receivership proceedings. There are, therefore, no remaining assets to be distributed to the general creditors. There has been heretofore presented to the State Court in charge of the receivership proceeding therein, a petition by the trustee in bankruptcy requesting that court to acquiesce in the petition of said trustee which sought to require the receiver to deliver all the assets in his hands for further administration in the Bankruptcy Court. Under date of October 23, 1944, the petition was denied. The trustee in bankruptcy, in a petition dated November 7, 1944, now comes to this Court and asks for an order directing the State Court receiver to turn over to him the assets of the debtors' estate. He claims that the state statute under which the State Court acted, and under which the receiver acted, is an insolvency statute, and contends that, therefore, this Court has exclusive jurisdiction over the assets in the receiver's possession and must exercise that jurisdiction.

▌ At the outset, one principle seems clear. If the proceeding under section 8013 is a proceeding to enforce a lien obtained more than four months before the bankruptcy petition was filed, and if such proceeding is not an insolvency proceeding, then it must follow that the subject of

such proceedings is not a part of the bankruptcy estate and therefore not subject to the jurisdiction of this Court. Straton v. New, 1930, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060; Metcalf v. Barker, 1902, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122. It is generally recognized that the appointment of a receiver in a proceeding under Section 8013 is in the nature of an equitable attachment. As stated in National Guardian Life Ins. Co. v. Schwartz Bros., supra 14 N.W.2d at page 351: "The appointment of a receiver in such case is in the nature of an equitable attachment of the property of the corporation for the benefit of all of its creditors, both simple and secured."

In Cohen v. Mirviss Mfg. Co., 1929, 178 Minn. 20, 226 N.W. 198, the court was considering the identical question which is presented herein, except that the affairs of the corporation were being wound up as the result of a stockholders' suit. The case arose under the chapter which contains Section 8013, but it arose under a different section of the chapter. There, as here, the receiver was appointed more than four months prior to the adjudication in Bankruptcy Court, and the court held that where in such suit claims of creditors had been allowed more than four months before the initiation of bankruptcy proceedings, the trustee in bankruptcy was not entitled to the assets in the hands of the receiver, particularly when it appeared that the assets were insufficient to pay such liens in full and where there would be no surplus for the trustee in bankruptcy. In determining the question before the court, Section 8013 was considered and interpreted, and the court stated in referring to that section at page 23 of 178 Minn., 226 N.W. at page 199: "Our statute provides that where a judgment creditor of a corporation has an execution returned unsatisfied, he may file a creditor's bill to have the property of the corporation sequestered and a receiver appointed to take possession of such property. [G.S.1923], § 8013 [as amended, 2 Mason, 1927, id.] Where he does this more than four months before the filing of a petition in bankruptcy, it is conceded that he acquires a lien on the assets of the corporation in the nature of the levy of an equitable execution thereon which is not divested by the bankruptcy proceedings."

▌ It seems clear, therefore, that upon the appointment of a receiver under Section 8013 a lien is created in favor of the creditors. See, also, Dispatch Printing Co.

v. Security Bond & Investment Co., 154 Minn. 211, 191 N.W. 601. The views of the Minnesota Supreme Court in Cohen v. Mirviss Mfg. Co., supra, would seem to set at rest the question which is now presented by the trustee; that is, the receiver herein was appointed on August 3, 1943, and the adjudication in bankruptcy occurred on May 11, 1944. However, he urges that the Minnesota Supreme Court did not solve the problem presented in Cohen v. Mirviss Mfg. Co., because, as stated in the note, Volume 25, Minnesota Law Review, p. 105, the court in that case "did not consider the question whether the statute was an insolvency act and suspended by the National Bankruptcy Act." True, if the proceedings which created the lien are insolvency proceedings which are null and void because of conflict with the Bankruptcy Act, then it must follow that the liens are likewise void. But the trustee herein does not contend that the proceedings under Section 8013 are null and void. He stated in his reply brief (page 15):

"In this connection, although we believe we have made ourselves clear in our first brief that the Bankruptcy Act itself does not suspend a statute such as Section 8013, Minnesota Statutes, that it is only upon the filing of a bankruptcy petition and an adjudication that a proceeding under that statute is superseded by a bankruptcy proceeding, we will mention further the U. S. Supreme Court decision in Re Watts, 190 U.S. 1 [23 S.Ct. 718, 47 L.Ed. 933], the court in part stating, i. e.:

" 'We do not understand it to be contended that the passage of the Bankruptcy Act in itself suspended the Statute of Indiana in relation to the appointment of receivers, but only that when the proceedings for such appointment took the form, as they did here, of winding up the affairs of the insolvent corporation, the proceedings in bankruptcy displaced those in the State Court and terminated the jurisdiction of the latter.' "

█ It is to be gathered, therefore, that the trustee recognizes that all of the proceedings under Section 8013 up to the time of the filing of the petition in bankruptcy were entirely legal and cannot be attacked collaterally. The trustee merely urges that, after the petition in bankruptcy was filed, the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., superseded the state proceedings and all of the assets in the hands of the re-

ceiver since that date were subject to the exclusive jurisdiction of the Bankruptcy Court. However, that being the position of the trustee, it must follow that the lien created under Section 8013 more than four months prior to the adjudication in bankruptcy is not vitiated by the adjudication. Consequently, there is no conflict between the State Court and the Bankruptcy Court because, under the admitted facts, the State Court is not administering any assets which belong to the bankruptcy estate. The liens which were acquired · by creditors more than four months prior to the bankruptcy have absorbed the entire estate. There is no surplus or equity in any of the assets in the hands of the State Court receiver which can now. be passed to the Bankruptcy Court for the purpose of administration. Certainly, under these circumstances, it would be futile to require the State Court receiver to make an accounting. There is no contention on the part of the trustee that the fees allowed to the receiver or to his attorney are exorbitant, or that any of the claims allowed are not valid or that the procedure in State Court was in any way irregular. But, be that as it may, where it appears that the liens of the creditors have been in existence for more than four months prior to the adjudication and the assets will not pay all of the liens in full, the State Court has the right to retain jurisdiction and to distribute the assets to those who may be entitled thereto under their lien rights. Cohen v. Mirviss Mfg. Co., supra. And as stated in Straton v. New, at page 322 of 283 U.S., 51 S.Ct. at page 467, 75 L. Ed. 1060: "The bankruptcy law contains no express provision preserving liens acquired by legal proceedings more than four months before the petition is filed. But it is clearly implied that they shall be saved from the operation of the law, for section 67f [11 U.S.C.A. § 107(f)], voids only liens obtained by legal proceedings within that period. It has consequently been held that those acquired earlier, if valid under state law, are preserved, and will be accorded priority by the bankruptcy court in distribution of the estate, in accordance with applicable local law." And at page 323 of 283 U.S., 51 S.Ct. at page 467, 75 L.Ed. 1060: "If appellants are correct in their contention that the creditors' suit was no more than a proceeding to enforce liens saved from discharge by the subsequent bankruptcy of the debtor, it follows, as they claim, that the District Court

sitting in bankruptcy had no power to enjoin that action."

■ Moreover, if it should be urged that Section 8013 is an insolvency statute, and hence null and void, such contention should not be sustained. The exact definition of an insolvency statute is obviously difficult. It should be noted, however, that this statute is not even designated as an insolvency statute. Its title is "Sequestration—Receiver—Distribution." It has been on the statute books in this State since 1851 in substantially its present form. St.1851, c. 77. It is not without significance that the original title of this chapter was "Of Proceedings Against Corporations in Chancery." True, there will be language found in one of the Minnesota decisions wherein an action under this statute is referred to as "in the nature of insolvency proceedings." Spooner v. Bay St. Louis Syndicate, 47 Minn. 464, 50 N.W. 601. But in that case the Supreme Court was considering the authority of the lower court to enter a default judgment against a stockholder for a debt due from him to the corporation for an unpaid stock subscription. It held that, regardless of the amount of the claim of the plaintiff as reflected in the bill of complaint, judgment could be entered against the stockholder in an amount necessary to satisfy the demands of all creditors who had appeared and proven their claims against the corporation. In referring to the proceeding as one in the nature of insolvency proceedings, it is quite evident that the court used such language because it was dealing with an insolvent corporation and that particular proceeding, therefore, did involve the sequestration of the property of an insolvent corporation for the purpose of ascertaining the amount of the corporate indebtedness and the application of the assets to the payment of the debts thus ascertained. Presumably, every proceeding in equity which seeks to sequester corporate assets of an insolvent corporation for the benefit of the creditors and to apply such assets to the payment of the creditors' claims, has some aspects of an insolvency proceeding. But it does not follow that the statute is an insolvency statute which runs afoul of the Bankruptcy Act. It is clear that state laws are only suspended when they conflict with the system provided by the Bankruptcy Act of Congress. Stellwagen v. Clum, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507. See, also, Section 11(a) (21), Title 11, U.S.C.A. This section, after providing for requiring receivers or trustees appointed in proceedings not under the Act to deliver the property to the debtor or other persons entitled thereto, concludes: "Provided, however, That such delivery and accounting shall not be required, except in proceedings under chapters 10 and 12 of this title, if the receiver or trustee was appointed * * * more than four months prior to the date of bankruptcy." In commenting upon this section of the statute, the Circuit Court of Appeals for the Fifth Circuit in Atlanta Flooring & Insulation Co. v. Oberdorfer Ins. Agency, 136 F.2d 457, 459, stated: " * * * This principle is that while federal bankruptcy statutes supersede state bankruptcy statutes, bankruptcy does not supersede a state court proceeding for the enforcement of a lien and the appointment of a receiver therein where the institution of the suit created a valid lien, or was for the enforcement of a valid existing lien obtained, more than four months prior to bankruptcy."

■ Certainly, one of the basic characteristics of an insolvency statute is insolvency of the individual or corporation against whom the proceedings are directed. But this statute applies equally to solvent corporations. It will be noted that the right of a judgment creditor to obtain the appointment of a receiver is not dependent upon the insolvency of the corporation. He merely needs to establish that the execution on his judgment was returned unsatisfied. The Supreme Court in sustaining a Wisconsin statute covering assignments for the benefit of creditors as against the charge that it was repugnant to the Bankruptcy Act emphasized that the statute applied equally to solvent and insolvent assignors. Pobreslo v. Joseph M. Boyd Co., 287 U.S. 518, 53 S.Ct. 262, 77 L.Ed. 469. Moreover, it would seem that the salient purpose of the statute is to aid a judgment creditor in the collection of his debt, and for that purpose the assets are sequestered and all creditors of the debtor are given an opportunity to participate on an equitable basis. This assures equality of distribution without any condition of discharge; in fact, the appointment of a receiver, the sequestration of the assets, and the distribution thereof, are merely incidental to the court's inherent equity power to appoint a receiver where the creditor has exhausted his remedies at law. Upon obtaining a judgment and having the ex-

766

ecution returned unsatisfied, the creditor has no other legal remedies to pursue. It seems reasonably clear that the statute was promulgated in aid of the court's equitable powers. O'Brien Mercantile Company v. Bay Lake Fruit Growers' Ass'n, 173 Minn. 493, 217 N.W. 940.

█ It is most significant that this statute does not provide for a discharge of the debtor. Not only is there an absence of any discharge provision, but there is no provision which seeks to rehabilitate or reorganize the corporation, as existed in First National Bank in Albuquerque v. Robinson, 10 Cir., 107 F.2d 50. Undoubtedly, the absence of a discharge provision in an insolvency law does not necessarily prevent the law from being condemned as such. But where the state law has no other bankruptcy attributes but a distribution of the assets in sequestration proceedings, where a solvent as well as an insolvent corporation may be proceeded against by a creditor, and where it fairly appears that the statute was merely enacted for the purpose of aiding a court of equity in carrying out its inherent equitable powers, the absence of a discharge provision in the statute under such circumstances is highly significant. See Stellwagen v. Clum, supra; International Shoe Co. v. Pinkus, 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318.

█ Granted that the State has no power to pass laws which hamper or restrict the proper operation of the Federal bankruptcy laws, Hammond et al. v. Lyon Realty Co., 4 Cir., 59 F.2d 592, the closing of this State Court receivership will not, under the admitted circumstances, interfere with the operation of the Bankruptcy Court for the very obvious reason, as heretofore noted, that there are no assets of which the Bankruptcy Court can invoke its jurisdiction. If there were a surplus in the receivership court over and above the liens of the creditors, or if no creditor had obtained any fixed right in State Court which is recognized by the bankruptcy statute, it is clear that the State Court proceeding, even at this late date, would have to give way to the Bankruptcy Court. Here, however, the State Court has obtained jurisdiction and liens have attached some nine months before the adjudication in bankruptcy. No cogent reason is forthcoming why there is any inconsistency with the provisions of the State statute in question and the Bankruptcy Act. Strictly speaking, any distribution of property to creditors may be the performance of an act which is also carried out by the Bankruptcy Court. But it is difficult to perceive the soundness of the contention that this statute, which does not even purport to deal exclusively with insolvents and does not usurp the salient purposes and objects of the Bankruptcy Act, should be condemned as null and void on the theory that it has invaded the field of bankruptcy legislation. It may not be amiss to observe that, if this estate were now to be turned over to the Bankruptcy Court, the only possible accomplishment would be the additional expense and burden to be saddled on an already expensive receivership proceeding.

It follows, therefore, that the application of the trustee in bankruptcy for an order of this Court requiring the State Court receiver to make an accounting of all funds and property in his hands and for an order requiring him to turn over to the trustee all assets and funds of said estates in his hands for administration by the trustee in bankruptcy should be, and the same hereby is, in all things denied. An exception is allowed to the petitioning trustee.