## St. Paul & M. Trust Co. *vs.* James Leck *et al.*

Argued April 10, 1894. Reversed April 20, 1894.

No. 8628.

**Insolvency as a ground for equitable set-off.**

The insolvency of a party against whom a set-off is claimed affords sufficient ground for the application of the doctrine of equitable set-off, and the equitable powers of the court in such cases are not impaired by the fact that an assignment for the benefit of creditors has been made by the insolvent under the statutes of this state.

Appeal by defendants, James Leck and Angus McLeod, from an order of the District Court of Hennepin County, *Robert D. Russell,* J., made August 31, 1893, sustaining a demurrer to their answer.

On February 9, 1893, one George McLeod deposited with the Farmers and Merchants State Bank of Minneapolis $530 and took therefor its certificate in and by which the bank agreed to repay the money to his order twelve months thereafter with six per cent interest. Prior to April 1, 1893, George McLeod sold and indorsed this certificate to the defendant Angus McLeod. On April 29, 1893, Angus McLeod made his promissory note to Leck & McLeod for $600 and interest at ten per cent a year due sixty days thereafter. It was indorsed by that firm and on that day discounted by this bank.

On June 20, 1893, the bank being insolvent, made an assignment of its property to the plaintiff, the St. Paul and Minneapolis Trust Company, in trust for its creditors under Laws 1881, ch. 148, as amended by Laws 1889, ch. 30. On July 25, 1893, the plaintiff brought this action upon the note against the maker and Leck the indorsers. They answered stating that defendant Angus McLeod held and owned the certificate of deposit, that the bank was utterly insolvent and that its assets were not sufficient to pay five per cent. of its debts. They prayed judgment that the certificate for $530 and accrued interest although not due be setoff against the note, and for such other and further relief as should be just and equitable. The plaintiff demurred to this answer on the ground that it did

not state facts sufficient to constitute a counterclaim or defense. On argument the trial court sustained the demurrer with $10 costs, saying:

If the only parties interested were the bank and the defendant McLeod it might be proper to depart from the legal and apply the equitable principle and allow the setoff, but here the rights of other creditors have intervened. If on the day before its assignment the bank had said to McLeod, "We are insolvent and are about to make an assignment, bring in and surrender your certificate not yet due and we will credit the amount on your note," and he had assented and credit had been made, the transaction could have been set aside as a preference. *Tripp* v. *Northwestern Nat. Bank,* 45 Minn. 383. If this would have been a preference surely a court of equity cannot interpose and by maturing a certificate by its terms not due, permit a preference to the debtor holding the certificate, by suffering it to be applied on his note held by the bank. By so doing the court would create a preference after the assignment which under the terms of the statute could not stand if made before the assignment. *Balch* v. *Wilson,* 25 Minn. 299; *Fera* v. *Wickham,* 135 N. Y. 223; *Laybourn* v. *Seymour,* 53 Minn. 105. There are decisions under the National Bankrupt Law which appear to hold a contrary doctrine to this, but they are governed by a provision of that statute, "that in all cases of mutual debts or mutual credits between the parties, the account between them shall be stated and one debt setoff against the other and the balance only shall be allowed or paid." There is no such provision in the assignment law of this state. The case of *Nashville Trust Company* v. *Fourth Nat. Bank,* 91 Tenn. 336, is not in harmony with this doctrine, but the reasoning upon which that decision rests is inconsistent with the reasoning in the cases cited above, and is not as logical as that in *Fera* v. *Wickham, supra.* For these reasons the demurrer is sustained.

*Gilfillan, Belden & Willard,* for appellants.

This question has not been decided adversely to the appellants in this court. *Tripp* v. *Northwestern Nat. Bank,* 45 Minn. 383; *Martin* v. *Pillsbury,* 23 Minn. 175; *Laybourn* v. *Seymour,* 53 Minn·

105; *Balch* v. *Wilson*, 25 Minn. 299.  The act of 1881 is a bankrupt law.  *Kinney* v. *Sharvey*, 48 Minn. 93; *Simon* v. *Mann*, 33 Minn. 412.  Bankruptcy for the purpose of the settlement of the bankrupt's affairs matures all claims against him.  *Citizens' Nat. Bank* v. *Minge*, 49 Minn. 454; *In re Minneapolis Mut. F. Ins. Co.*, 49 Minn. 291.

A person sued by an insolvent has a right in equity to setoff a claim against the insolvent not yet due.  This equity cannot be taken away by an assignment.  *Barbour* v. *National Exch. Bank*, 50 Ohio St. 90; *Merwin* v. *Austin*, 58 Conn. 22.  To say that the allowance of the setoff would create a preference contrary to the provisions of our insolvent law, and therefore the appellant's contention must be wrong, is to beg the question.  That is the very thing to be decided, whether a preference is created.  *Drake* v. *Rollo*, 3 Biss. 273; *Scott* v. *Armstrong*, 146 U. S. 499.

If the law in the United States courts is in favor of the appellants this court will follow it.  *National Bank of Commerce* v. *Chicago, B. & N. R. Co.*, 44 Minn. 224; *Joslyn* v. *St. Paul Distilling Co.*, 44 Minn. 183; *Rosemond* v. *Graham*, 54 Minn. 323.  Upon this point of equitable setoff the federal courts do not follow the state practice and procedure.  *Scott* v. *Armstrong*, 146 U. S. 499; *Carr* v. *Hamilton*, 129 U. S. 252; *Scammon* v. *Kimball*, 92 U. S. 362; *Schuler* v. *Israel*, 120 U. S. 506.

It is no answer to these cases to say that the provisions of the bankrupt law allowed a setoff in cases not covered by the common law.  Speaking of the bankrupt act (U. S. R. S. § 5073) the court said:  This section was not intended to enlarge the doctrine of setoff, or to enable a party to make a setoff in cases where the principles of legal or equitable setoff did not previously authorize it.  *Sawyer* v. *Hoag*, 17 Wall. 610; *Yardley* v. *Clothier*, 49 Fed. Rep. 337; *Wagoner et al., Receivers* v. *Paterson Gas Light Co.*, 23 N. J. Law, 283.

The cases on this question in other jurisdictions are conflicting.  Most of those decided prior to 1892 are examined and considered in a Tennessee case decided in that year.  The argument of the court in that case the appellants adopt as a part of their argument

here.   *Nashville Trust Co.* v. *Fourth Nat. Bank*, 91 Tenn. 336; *Kentucky Flour Co.'s Assignee* v. *Merchants Nat. Bank*, 90 Ky. 225; *Barbour* v. *Nat. Exch. Bank*, 50 Ohio St. 90; *Hughitt* v. *Hayes*, 136 N. Y. 163.

The appellant McLeod being the principal debtor and the appellant Leck a mere surety for him, the setoff can be allowed although the certificate was owned by McLeod alone.   *Becker* v. *Northway*, 44 Minn. 61.

*H. D. Stocker*, for respondent.

It is not claimed that the right of setoff exists at law, and it would be a violation of equity to compel a setoff after the rights of third parties have intervened.   There are no authorities to sustain appellant's position under similar facts.   It would not only give Angus McLeod a preference over other creditors but it would deprive the creditors of their just claim against James Leck one of the parties to this note.   *Barnstable Sav. Bank* v. *Snow*, 128 Mass. 512.   If the Bank, as suggested by the court below, had permitted this setoff to be made after it was known to be insolvent, the plaintiff could have collected the money represented by this note upon the ground that defendants had received a preference contrary to law.   *Tripp* v. *Northwestern Nat. Bank*, 45 Minn. 383.

If the bank could not have made the setoff after insolvency then the assignee certainly could not permit it to be done.   This court will not do that which neither the bank nor the assignee could legally do.

If the right of setoff did not exist at the time of the assignment, it cannot arise afterwards.   The equities of the creditors of this insolvent bank are superior to any Angus McLeod can possess. *Bosler* v. *Exchange Bank*, 4 Pa. St. 32; *Appeal of F. & M. Bank*, 48 Pa. St. 57; *Stevens* v. *Schuchmann*, 32 Mo. App. 333; *Osborne* v. *Byrne*, 43 Conn. 155; *Lockwood* v. *Beckwith*, 6 Mich. 168; *Hannon* v. *Williams*, 34 N. J. Eq. 255; *Spaulding* v. *Backus*, 122 Mass. 553.

The decisions of New York have been uniform in sustaining the position taken by the plaintiff in this case, and we will content ourselves by citing *Fera* v. *Wickham*, 135 N. Y. 223.

COLLINS, J.    An examination of the adjudicated cases on the question now before us will disclose that the positions assumed by the counsel for the respective parties to this controversy are well supported by the authorities, and that any attempt to reconcile the squarely-conflicting views found in the many opinions would prove futile.    Evidently it has been regarded as an open question in this state, although the principle involved has received some attention in *Balch* v. *Wilson*, 25 Minn. 299; *Tripp* v. *Northwestern Nat. Bank*, 45 Minn. 383, (48 N. W. 4;) and recently in *Laybourn* v. *Seymour*, 53 Minn. 105, (54 N. W. 941.)

That the insolvency of a party against whom a set-off is claimed is a sufficient ground for the exercise of the jurisdiction of a court of equity in allowing a set-off in cases not provided for by law, or, in other words, that insolvency has long been recognized as a distinct equitable ground for set-off, cannot well be disputed. Some of the cases supporting this doctrine are cited in Waterman, Set-Off, §§ 431, 432.    See, also, *Kentucky Flour Co.'s Assignee* v. *Merchants' Nat. Bank*, 90 Ky. 225, (13 S. W. 910,) and cases hereinafter mentioned.    From these authorities there can be little or no controversy over the proposition that had the bank itself while insolvent, and prior to an assignment, brought an action upon the note in question, defendant McLeod could have invoked the power of the court in his behalf, and could have been allowed to interpose his equitable set-off arising out of the certificate of deposit, although it had not then matured.    So that the prominent inquiry now is whether this equitable power of the court was impaired by the assignment to plaintiff under the statute of 1881 a few days before the note became due and several months prior to the maturity of the certificate.

Upon principle, it is difficult to see why a set-off which a debtor might have utilized in an action brought against him by an insolvent creditor cannot be made available when the action is brought by an assignee.    To determine that it cannot, it must be held, contrary to the general rule, that, by reason of the assignment, the relations between the parties have been radically changed.    Just how this change is brought about is not clearly pointed out in any of the cases cited by respondent's counsel, although it is said in the case mainly relied upon—*Fera* v. *Wick-*

*ham*, 135 N. Y. 223, (31 N. E. 1028)—that, before the assignment,. an equitable adjustment by set-off may be made without inter- fering with the equities of others, while immediately upon the passing of the estate to an assignee the formerly existing and nat- ural equity disappears in superior equities resting in the general body of creditors; the latter are then interested, says the court, in having equality of distribution.

In line with this reasoning, the counsel for respondent in the case at bar argues that, if the defendant McLeod can be allowed to set off the certificate to the amount of his note, he thereby gains the preference over other creditors forbidden by our insolvency law.    One answer to this line of argument is that, whenever a debtor is insolvent, all of his creditors are interested in the equal- ity of distribution referred to.    The interest in having the estate of an insolvent ratably distributed among all of his creditors arises out of the fact of his insolvency, and not by the assignment.    If the general body have superior equities as to the property and its distribution over the equitable rights of one of their number, they must antedate and have become vested before the assignment.

It seems to us that any line of reasoning based upon the propo- sition that these superior equities are not brought into existence until the assignment is made, and then suddenly come to life, while at the same time, all as if by the wand of the magician, the former and natural equity of the single creditor as suddenly dis- appears, is unsound.    We are convinced that the better rule is. that an equitable set-off which the debtor of an insolvent has at the time the latter stops payment is not affected or altered by an assignment.  ` This statement is well supported by authorities, some from jurisdictions governed by statutory provisions similar to our own.    *Schuler* v. *Israel*, 120 U. S. 506, (7 Sup. Ct. 648;) *Carr* v. *Hamilton*, 129 U. S. 252, (9 Sup. Ct. 295;) *Scott* v. *Armstrong,* 146 U. S. 499, (13 Sup. Ct. 148;) *Merwin* v. *Austin*, 58 Conn. 22, (18 Atl. 1029;) *Wagoner et al., Receivers*, v. *Paterson Gas Light Co.*, 23 N. J. Law, 283 ; *Nashville T. Co.* v. *Fourth Nat. Bank*, 91 Tenn. 336, (18 S. W. 822;) *Barbour* v. *National Exchange Bank*, 50 Ohio St. 90, (33 N. E. 542.)

The defendant McLeod being the principal debtor, and Leck an indorser simply, the set-off can be allowed, although McLeod alone

owned the certificate. *Becker* v. *Northway,* 44 Minn. 61, (46 N. W. 210.)

Order reversed.

BUCK, J., absent, sick, took no part in this case.

(Opinion published 58 N. W. 826.)