## W. C. ROGERS v. ARTHUR W. DREWRY AND OTHERS.[1]

December 20, 1935.

No. 30,478.

[1]Reported in 264 N. W. 225.

*Doherty, Rumble & Butler,* for appellants.
*O'Brien & Quinlivan,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendants appeal from an order overruling their general demurrer to plaintiff's amended complaint, the trial court having certified the question presented thereby to be important and doubtful.

The challenged pleading alleges that plaintiff is the receiver of Drewry & Sons Company, a corporation organized under the laws of Delaware but authorized to do business in Minnesota and having its principal office at St. Paul; that on and prior to April 5, 1932, defendants were the officers, sole stockholders, and board of directors of that company; that between April 5 and December 20, 1932, "defendants had corrupt and fraudulent dealings" with Drewry's Ltd. of Winnipeg (hereafter we shall refer to the two companies as the American and Canadian company, respectively) by virtue of which defendants diverted from the American company and appropriated to their own use large amounts of its assets in fraud of that company and its creditors; that the Canadian company on April 5 entered into a written agreement with defendants whereby it acquired an option to purchase all the capital stock of the American company for the sum of $136,290. As consideration for the option defendants were to receive from the Canadian company annual payments of $7,500 while the option was in force, payable in quarterly instalments, the purchaser to have the right of prepayment of the principal at any time and thereby do away with further

payments under the option. While this contract was in force the Canadian company was to have voting power and full control of the American company. The agreement provided that the plant and equipment should be maintained as it was at the date of the contract, April 5, only ordinary wear and tear and depreciation to be excepted therefrom. The contract also provided that in event the stock of the American company was returned to defendants the Canadian company would pay "for any decrease in the excess of current assets over liabilities." The Canadian company proceeded to operate the American company and continued so to do until December 20. During the interim defendants are alleged to have "remained in visible and active charge" of the business and "according to the corporate records * * * retained their respective positions as directors of said company." It is also alleged that at the time of making this contract the American company, "according to its balance sheet as of March 31, 1932, had total liabilities" in the way of notes and accounts payable, taxes, and other items amounting to $9,336.23; that on December 20 defendants entered into an agreement with the Canadian company canceling the original agreement and releasing it from further liability by virtue of its option, the consideration therefor being alleged to be $17,181; that the American company also released the Canadian company from all claims, howsoever arising, and so did the Canadian in respect of the American company. It is charged that the liabilities had increased in the interim to the amount of $17,157.68; that "practically" the entire indebtedness of the American company as of December 20, 1932, remained unpaid on March 1, 1933, at which time plaintiff was appointed its receiver. It is averred that he then took charge of the property and sold the assets of the company for $17,000, paying out of that sum 30 per cent to creditors; that he has approximately $8,100 remaining, but after payment of the expenses of receivership the creditors of his company will receive less than 50 per cent of their claims as filed and allowed in the receivership proceedings.

Upon these alleged facts plaintiff seeks recovery of the money received by defendants from the Canadian company for the cancellation of the option contract, with interest and costs.

Plaintiff's brief bristles with citation of authorities and arguments why he should recover damages for the alleged fraud practiced by defendants in making the cancellation agreement with the Canadian company; and demand is made that the $17,181 received by them in the settlement should be paid to him for the benefit of corporate creditors.

Of course there can be no doubt that directors of a corporation have a solemn duty to perform when dealing with corporate property. If defendants connived with the Canadian company or its officers to divert the corporate assets of the American company to their own gain or to the advantage of anyone else, there can be no doubt that the creditors have a right to complain and that the receiver may proceed to enforce these rights in their behalf. The latest case that has come to our attention and which has an important bearing upon what we are here considering is McCandless v. Furland, 296 U. S. 140, 56 S. Ct. 41, 80 L. ed. 74.

The question here is not one of lack of right to recover if fraud or other improper conduct is shown resulting in loss to the American company. Our only inquiry is whether the facts pleaded make out a cause of action.

It is everywhere conceded that actionable fraud is not to be "lightly presumed." Baker v. Frischkorn, 271 Mich. 485, 490, 260 N. W. 754, 756. Nor does mere assertion of fraud suffice. The facts constituting the fraudulent act must be pleaded. Using such words as "fraudulent," "corrupt," or "wrongful" are conclusions only. They constitute convenient labels and may perhaps help euphonize counsel's verbal assault upon an accused defendant. But when a pleading is attacked, as here, upon demurrer, we cannot disregard the obvious necessity of holding to well-established rules of pleading such matters.

"The primary object of pleadings is to apprise each party of the grounds of claim or defense asserted by the other, in order that he may come to trial with the necessary proof and be saved the expense and trouble of preparing to prove or disprove facts about which there is no real controversy between the parties." 5 Dunnell, Minn. Dig. (2 ed.) § 7498, and cases under note 33.

On the subject of what must be pleaded to constitute a cause or defense where fraud is the basis, see Alden v. Christianson, 83 Minn. 21, 24, 85 N. W. 824; Greenfield v. Minnesota M. &,D. Co. 138 Minn. 446, 448, 165 N. W. 274; Di Re v. Fire Assn. 156 Minn. 281, 282-283, 194 N. W. 755; Schreiner v. Ranweiler, 169 Minn. 92, 95, 210 N. W. 628; Hutchins v. Bassin, 170 Minn. 126, 212 N. W. 202. In 3 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 3836, the rule is stated thus: "In pleading fraud the material facts constituting the fraud must be specifically alleged. A general charge of fraud is unavailing."

It is also well established that a stockholder, whether director or not, has a perfect right to sell or otherwise dispose of or encumber his own stock in a corporate enterprise. This right is generally recognized. In Seitz v. Frey, 152 Minn. 170, 174, 188 N. W. 266, 268, this court said:

"The weight of authority, however, is to the effect that a director or officer does not stand in a fiduciary relation to a stockholder in respect to his stock, and has the same right as any other stockholder to buy stock from or sell stock to another stockholder."

See also 14 C. J. p. 663 [§ 1033] A; 14A C. J. p. 127 [§ 1895] 10-a.

Obviously, from the facts pleaded, the defendants in their individual capacity as the holders of the entire stock issue of the American company entered into a perfectly legitimate agreement with the Canadian company. There can be no doubt of their right so to do. The stock was their property. Nowhere in the complaint is there any allegation that the $17,181 received by them from the Canadian company in settlement of the option agreement and in adjustment of all claims of one company against the other came from the assets or property belonging to the American company. Clearly, no creditor could suffer any harm or make claim to any interest or right to the money received from the Canadian company by these defendants unless the money came from the assets of the domestic corporation. The allegations of fraud do not specify in what manner or form fraud of any kind was practiced. The mere assertion of such conduct without more can afford no ground for relief.

Nor is there any allegation of negligence by defendants resulting in loss to plaintiff's company. True, plaintiff alleges that defendants "illegally took, received and acquired to themselves, directly and indirectly, the monies and property of the said Drewry & Sons Company, as aforesaid," etc. His trouble here, as elsewhere in the complaint, is that there is no statement of facts from which fraud, overreaching, or faithlessness can be made a basis for recovery. Nowhere is there a statement of fact alleged as to methods employed or amount involved respecting the claimed diversion of assets. Attentive reading of the complaint fails to disclose whether defendants are charged with embezzling corporate money or property, paying exorbitant salaries, permitting the Canadian company to waste the property of the American company, or in fact anything upon which to hang a single actionable wrong. The only fact pleaded is that the company's liabilities increased while the Canadian company was in charge. But that fact alone does not predicate fraud or diversion of corporate property into forbidden channels. Many business enterprises suffered losses during the troublesome times through which we have passed in recent years. An allegation of business loss, without more, leaves no basis upon which to build liability in a cause founded upon fraud and misappropriation of corporate assets. Plaintiff's right to impeach the transaction of which he complains "depends upon its fraudulent character." Marin v. Calmenson, 158 Minn. 282, 287, 197 N. W. 262, 264.

We think the challenged complaint fails to state a cause of action. The order is reversed.