ARNOLD SWANSON, RECEIVER FOR TOMLINSON
LUMBER SALES, INC. v. TOMLINSON LUMBER
MILLS, INC.
BURLINGTON NORTHERN, INC. v. TOMLINSON
LUMBER SALES, INC., AND ANOTHER.

239 N. W. 2d 216.

February 6, 1976—Nos. 45009, 45963, 45969.

*MacDonald, Munger & Fillenworth* and *A. Blake MacDonald,* for Tomlinson Lumber Mills, Tomlinson Lumber Sales, and Kenneth Tomlinson.

*Johnson, Fredin, Killen, Thibodeau & Seiler* and *Conrad M. Fredin,* for receiver.

Heard before Sheran, C. J., and Rogosheske, Peterson, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

These appeals arise out of two related actions in the St. Louis County District Court. The first was an action on several promissory notes brought by Burlington Northern, Inc. (Burlington) against Tomlinson Lumber Sales, Inc. (Tomlinson Sales) and its president and sole stockholder, Kenneth D. Tomlinson (Tomlinson). That action was settled February 7, 1972, and judgment entered against Tomlinson Sales April 11, 1972, in the amount of $214,100. Execution on the judgment was returned unsatisfied and a receiver, Arnold F. Swanson, was appointed May 25, 1972, pursuant to Minn. St. 316.05.

In March 1975 Tomlinson and Tomlinson Sales moved for a satisfaction of the judgment and an order removing the receiver.

On April 22, 1975, the court entered an order denying the motion but retaining jurisdiction over the question of terminating the receivership until the judgment was paid in full. The judgment was finally satisfied May 20, 1975, by Tomlinson.

The receiver then sought discretionary review of the order of April 22, which was granted (No. 45963), and also appealed from that order (45969). On July 31, 1975, the court entered an order awarding the receiver fees and expenses in the sum of $30,590 and authorizing the receiver to liquidate all property in his hands belonging to Tomlinson Sales in order to satisfy that award. On October 17, 1975, that order was vacated and the district court certified to this court the question of whether a receiver, after the underlying judgment has been satisfied, can continue to serve for the purpose of collecting his own fee and expenses. We hold that he can.

The second action was brought by the receiver, in an effort to liquidate the assets of Tomlinson Sales in order to satisfy the Burlington judgment, against Tomlinson Lumber Mills, Inc. (Tomlinson Mills) on a debt owed Tomlinson Sales. The receiver's motion for summary judgment was heard August 29, 1973, and granted December 14, 1973. Judgment was entered the same day, from which Tomlinson Mills appeals (No. 45009). We affirm.

Tomlinson Sales and Tomlinson Mills are two of several corporations solely owned by Tomlinson or jointly owned by him with other members of his family. Tomlinson is president and a director of all the corporations.

On August 20, 1970, Tomlinson, as president of Tomlinson Sales, executed certain promissory notes on behalf of the corporation, which were due December 31, 1970, and payable to Burlington in the total sum of $209,126.26. The notes were not paid when they became due and consequently Burlington commenced suit on the notes March 5, 1971. A receiver was appointed to preserve the assets of Tomlinson Sales pending the outcome of the action, apparently on the basis that Tomlinson Sales was insol-

vent or in imminent danger of becoming insolvent. Burlington's motion to continue the receivership was denied, however, on May 17, 1971, it appearing to the court that Tomlinson Sales was solvent at that time.

The assets of Tomlinson Sales as of the date Burlington commenced its action consisted almost wholly of accounts receivable from other Tomlinson corporations, among them being the Tomlinson Mills obligation. On September 10, 1971, all of these accounts were converted to long-term notes, due in 10 years and bearing interest at the rate of 5 percent per annum, payable annually. According to the affidavit of Tomlinson, the purpose of the transaction was to afford these Tomlinson companies additional time in which to meet their obligations, apparently in order to avoid financial ruin. Tomlinson Sales received no consideration for the conversion of these *current* assets into *longterm* receivables.

On February 7, 1972, the suit by Burlington was settled and judgment was entered against Tomlinson Sales April 11, 1972, in the amount of $214,100. Execution on the judgment was returned unsatisfied and Arnold F. Swanson was appointed receiver of Tomlinson Sales May 25, 1972. In an effort to liquidate the assets of Tomlinson Sales in order to satisfy the Burlington judgment, the receiver commenced lawsuits against all three companies indebted to Tomlinson Sales, then being unaware of the conversion of the accounts receivable. When the conversion was revealed in the answers to interrogatories, the receiver moved for summary judgment on the theory that the conversion was invalid due to the common control and management by Tomlinson, and thus the obligations of these companies were due and payable. Summary judgment was entered in the Tomlinson Mills action December 14, 1973, and the Burlington judgment was satisfied May 20, 1975, by Tomlinson. The judgment against Tomlinson Mills remains in the hands of the receiver at this time, and it is apparently this judgment to which he looks to collect his fees and expenses.

The issues raised on this appeal are:

(1)  Can a receiver, duly appointed pursuant to Minn. St. 316.05, after the underlying judgment giving rise to his appointment has been satisfied, continue to serve in that capacity for the sole purpose of collecting his fees and expenses awarded him by the court?

(2)  Should a long-term note owed a corporation in receivership be set aside where (1) the note was the result of the conversion of currently due accounts receivable, (2) the conversion occurred following the commencement of an action by a creditor which subsequently resulted in the judgment giving rise to the receivership, and (3) both the corporation in receivership and the corporation indebted on the note are under the common control and management by the same principal officer?

■  Tomlinson Sales contends that because the underlying judgment giving rise to the receivership has been satisfied, the receiver must return all Tomlinson Sales property in his possession to Tomlinson Sales, intact and without recovering his fees and expenses from that property. That contention is without merit.

Minn. St. 316.05, authorizing the appointment of a receiver upon the return unsatisfied of an execution on a judgment, provides for the disposition of the assets coming into the hands of the receiver. At the top of the list is the receiver himself. The statute reads:

"Upon complaint of a person obtaining judgment against a corporation, or his representatives, made after the return unsatisfied of an execution issued thereon, the court may sequestrate the stock, property, things in action, and effects of such corporation and appoint a receiver of the same; and, upon final judgment upon any such complaint, the court shall order the property remaining, or the proceeds thereof, to be disposed of under its direction, proportionately, in the following order:

"(1) In payment of the costs and expenses of the receivership;

\* \* \* \* \*

"After payment of the expenses of receivership and claims of creditors duly proved, the remainder, if any there be, shall be distributed pro rata among the stockholders proving themselves entitled thereto."

While that provision contemplates final judgment on the complaint of the judgment creditor, there does not seem to be any logical reason why a different disposition of the assets, with regard to the receiver, is required where the underlying judgment is satisfied prior to the conclusion of the receivership action.

Tomlinson Lumber relies on Joslyn v. Athens Coach & Car Co. 43 Minn. 534, 46 N. W. 77 (1890), where this court upheld the discharge of a receiver without payment of his fees. All of the property which came into the hands of the receiver was apparently used for satisfying the claims against the judgment debtor. While there was other personal property of the debtor of a value of $4,000, it was subject to a chattel mortgage and had been replevied by the mortgagee. The receiver had intervened in the replevin action but had not recovered possession of the property. This court stated:

"\* \* \* As a general rule, where a receiver has been regularly appointed, his compensation is a charge upon the funds in his hands. But in this case all the funds that came to his hands were appropriated without satisfying his claim for compensation. So that it is a case where the receiver has no assets in his hands applicable to payment of his charges; for, until and unless he should recover the property or its value involved in the replevin action, that property could not be deemed such. Of course, the receiver could not be retained merely to enable him to reduce such assets to possession for the purpose of paying his charges. That would be continuing the receivership for the benefit of the receiver,—a thing never heard of. It may be that, on an application of the

party whose property has been sequestrated (regularly) to be relieved from the receivership, the court may decline to discharge the receiver, except on condition of payment of his charges, until such time as will give him an opportunity to apply the funds or assets in his hands to such payment. That, however, is not this case." 43 Minn. 536, 46 N. W. 77.

The circumstances of this case are not the same as in Joslyn. Here the receiver has in his possession three judgments amounting to $797,702. It is true, of course, that reducing these judgments to cash may require further action on the part of the receiver, but, unlike Joslyn, these are assets apparently free of the claim of third parties. In Joslyn the property was subject to the substantial claim of a chattel mortgagee who had possession of the property. Furthermore, in this case it is the party whose property was sequestrated that moved for the discharge of the receiver. In Joslyn the moving parties were the creditors.

An analogy can be appropriately drawn from the decisions of this court holding that the satisfaction of the judgment or claim underlying the receivership will not result in the discharge or termination of the appointment of the receiver where other claims of other creditors remain unpaid. National Guardian Life Ins. Co. v. Schwartz Bros. Inc. 217 Minn. 288, 14 N. W. 2d 347 (1944); Parten v. Southern Colonization Co. 146 Minn. 287, 178 N. W. 744 (1920). By statute the claim of the receiver for his fees and expenses stands on better ground than those of other creditors since the receiver is entitled to priority in the disposition of the assets. It seems incongruous that his claim could be defeated by satisfaction of the underlying judgment while the claims of other creditors, subordinate to his, could not.

Moreover, it cannot be overlooked that the receiver is an officer of the court, appointed to assist it in a task it cannot perform itself. For that reason the court is said to be under an obligation to see that the receiver is paid his fees and expenses. See, generally, 2 Clark, Law of Receivers, § 641; Dunnell, Dig. (3 ed.)

§ 8247. Where valuable assets remain in the receiver's hands—assets usually subject to his claims for fees and expenses—returning the property intact would be to defeat the court's obligation to its officer.

Accordingly, we hold that the receiver may continue to serve until his own fees and expenses, including necessary attorneys fees, are paid. This includes reasonable fees and expenses incurred on this appeal. The case is remanded to the trial court to determine total fees and expenses incurred by the receiver to date, including the appeal. Once these fees and expenses are set by the trial court on remand, however, the receiver may not tax additional fees and expenses to the company he represents in order to collect his fees. Of course, fees and expenses are limited to those incurred from the date of appointment of the receiver up to and including this appeal.

■ The trial court's rationale for setting aside the conversion of the account receivable to a 10-year note was that Tomlinson, as the president and director of Tomlinson Sales, had breached his fiduciary duty to Burlington, as creditor of Tomlinson Sales, by freezing the corporate assets and essentially rendering the corporation insolvent,[1] and therefore unable to pay the Burlington note and subsequent judgment.

The relationship between corporate officers and directors and the creditors of a corporation is not altogether clear. While it is said that corporate officers and directors are not trustees for corporate creditors and owe them no fiduciary duty, 3 Fletcher, Cyclopedia Corporations (Rev. vol. 1965) § 849, it appears that this statement is subject to the qualification that there be sufficient assets to pay their claims.

In a memorandum accompanying its order granting Burlington's motion for summary judgment, the trial court cites Taylor

---

[1] While Tomlinson Sales' balance sheet apparently continued to show an excess of assets over liabilities, the conversion of its accounts receivable effectively rendered it unable to meet its obligations as they became due and thus insolvent in that sense.

v. Fanning, 87 Minn. 52, 91 N. W. 269 (1902), for the duty owed corporate creditors. While the circumstances of that case are wholly unlike those in the instant case, the principles expressed seem persuasive. Taylor involved an action by the receiver of an insolvent corporation to vacate a judgment against the corporation which inured to the benefit of its directors. In ruling for the receiver, this court said:

"Testing this case by the rule laid down in Taylor v. Mitchell, [80 Minn. 492, 83 N. W. 418 (1900)], it would seem that the court below was in error. It was there held that the directors of an insolvent corporation, being its creditors, cannot take advantage 'of their fiduciary relation, and deal directly with themselves, to the injury of others in equal right. If they do, equity will set aside the transaction, at the suit of creditors of the corporation or their representatives, without reference to the question of any actual fraudulent intent on the part of the directors; for the right of the creditors does not depend upon fraud in fact, but upon the violation of the fiduciary relation of the directors.' The validity of such a transaction does not depend upon the presence of an actual fraudulent intent, but the pertinent and controlling inquiry is, has there been a violation of the duty which the directors owed to all creditors of the corporation, and a disregard of the rule that directors cannot take advantage of their relationship to the corporation, and secure to themselves an advantage or preference over other creditors?

\* \* \* \* \*

"\* \* \* These directors have disregarded the governing principle in such cases, which is that the directors and manager of insolvent corporations are trustees of all of the property, are bound to apply the same pro rata for the payment of debts, and cannot use it to exonerate themselves to the injury of other creditors." 87 Minn. 53, 91 N. W. 270.[2]

---

[2] See, Farmers Co-op. Assn. of Bertha v. Kotz, 222 Minn. 153, 23 N. W. 2d 576 (1946) (corporate directors cannot secure a preference over other debtors by reason of their relation to the corporation where such

In this case, it is not shown that Tomlinson Sales was insolvent in any sense at the time of the transaction complained of, nor was the transaction for the *direct* benefit of the corporate director and officer individually. But the transaction did work to the substantial detriment of Burlington as a creditor and while not a *direct* benefit for Tomlinson was for the benefit of his other corporations, an obvious *indirect* benefit to him.

In Marin v. Calmenson, 158 Minn. 282, 287, 197 N. W. 262, 264 (1924), it is stated that "[t]he right of a receiver of an insolvent corporation to disaffirm its dealings in the interest of creditors is recognized, but the dealings must have been in fraud of the creditors' rights." In the transaction complained of in that case, the directors and officers exceeded the corporate debt limit. While Marin conditions the receiver's disaffirmance of a corporate transaction on a showing of "fraud," where the transaction is for the benefit of a director or officer, directly or indirectly, or for a party other than the corporation, it would seem, as stated in Taylor v. Fanning, *supra,* the "pertinent inquiry" should be, not whether there was actual fraudulent intent, but whether the directors or officers have secured an advantage to themselves at the expense of corporate creditors solely because of their relation to the corporation. Such would seem to be the case here. Tomlinson has given Tomlinson Mills, a corporation under his ownership and control, an extension of a debt in order to save it from financial ruin. The result of that extension has been to freeze practically all of the assets of Tomlinson Sales, thereby frustrating Burlington's collection efforts. Further aggravating the situation is the fact that 6 months prior to the time of the

---

preference operates to the detriment of creditors); Rogers v. Drewry, 196 Minn. 16, 264 N. W. 225 (1935) (corporate directors cannot divert corporate assets to their advantage or the advantage of anyone else to the detriment of creditors) (dicta); Aiken v. Timm, 147 Minn. 317, 180 N. W. 234 (1920) (conveyance of realty to wife of corporate general manager may be set aside by corporate creditors where it operates to their detriment and as a preference).

extension Burlington had begun suit against Tomlinson Sales on notes then some 9 months overdue.[3]

Tomlinson Mill's arguments that a corporation may do with its property as it will and may modify contracts without consideration may very well be true, but the question, as the trial court recognized, is whether it may do so to the detriment of a creditor. Under the circumstances of this case it should not be permitted to do so.[4]

The issue raised in Nos. 45963 and 45969 and by the trial court's certified question require that the case involved be remanded to determine reasonable fees and costs to date in accord with this opinion.

The summary judgment appealed from in No. 45009 is affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.

---

[3] Transactions involving corporations under the common control of the same officers or directors are regarded with skepticism by the courts and closely scrutinized. While apparently not void, they are voidable where unfair to one of the corporations or to shareholders of one of the corporations. See, generally, Fletcher, Cyclopedia Corporations (Rev. vol. 1965) §§ 961 to 964. While the receiver here is not pressing the claims of the corporation or shareholders, there does not seem to be any reason not to scrutinize such a transaction where a creditor contests it and it has worked to his detriment.

[4] Tomlinson Mills also contends, without much force, that this case was inappropriate for summary judgment for the reason that there is a genuine issue of material fact. The fact in dispute, it argues, is the motivation behind the conversion of the accounts receivable to long-term debt. However, the receiver accepts the statement in Tomlinson's affidavit that the motivation was to improve the financial condition of the indebted corporations. That would seem to eliminate the factual issue.