**B & S RIGGING & ERECTION, INC., J. Howard Broderius and Steven Yates, Appellants,**

v.

**Thomas WYDELLA, Dennis McCauley, and Kenneth Sipe, Sr., Respondents.**

No. C3–83–1996.

Court of Appeals of Minnesota.

July 17, 1984.

David W. Thurston, St. Paul, for appellants.

Mark J. Fellman, MacPherson & Fellman, Minneapolis, for respondents.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Respondents, employees of an insolvent corporation, obtained a judgment for vacation pay from appellants, corporate shareholders and another corporation under their control. The parties dispute whether appellants received an impermissible preference from the insolvent corporation.

We affirm.

## FACTS

A. The Corporations.

Until March 1981 respondents were employees of Terry Trucking, Inc. (Terry), a corporation organized in May 1979 and engaged in the business of hauling heavy equipment for construction contractors. From the time of its incorporation, appellants, J. Howard Broderius (Broderius) and Steven Yates (Yates), were shareholders, directors, and officers of Terry. One other stockholder, Bobby May, was not involved in transactions leading to this suit and was discharged from liability by the trial court.

The appellant, B & S Rigging & Erection, Inc. (B & S), is engaged in the millright and erection business and was incorporated in 1966. In the period relevant to this action, the sole shareholders of B & S were Broderius and Yates, and the directors and officers were Broderius, Broderius' wife, Donna, and Yates. The two corporations (Terry and B & S) maintained intercompany accounts for the purchase of equipment, rental of parts, and use of each other's employees. Intercompany accounts were periodically balanced and a check issued by either company for any difference owed.

At its inception, Terry purchased the trucking business of Terry Brothers, Inc. Part of the purchase price was to be paid over a five-year period, and Terry Brothers obtained a perfected security interest in the trucks, equipment, etc., purchased by Terry Trucking.

Certain financial arrangements were also made at this time between Terry Trucking and the First National Bank of St. Paul (Bank). The Bank gave Terry a $70,000 line of credit. Broderius, Yates and May personally guaranteed the line of credit. As further security for the credit, the St. Paul Bank, on July 7, 1980, obtained a perfected security interest in certain property of Terry Trucking, including accounts receivable.

In late 1979 and 1980, the economy became depressed; the business of Terry was substantially reduced, and B & S made loans totaling $20,000 to Terry between May 21, 1980—July 1, 1980.

On June 30, 1980, Terry Trucking's balance sheet showed liabilities totaling about $324,000 and assets totaling about $314,-000.

Efforts to sell Terry began in 1981. Broderius and Yates decided in March 1981 that they would close Terry, and sent letters to the respondent employees informing

them of this fact. Terry Trucking ceased operations on March 27, 1981. Terry was insolvent in February and March 1981. Broderius and Yates hired an attorney to informally conclude the business of Terry Trucking. No formal dissolution or bankruptcy proceedings were ever initiated.

### B. The Set-Off Transaction.

On March 27, 1981, Terry Trucking owed B & S $20,000 for the operating loans made in 1980. B & S, in turn, owed Terry Trucking the approximate sum of $14,000 on intercompany invoices (for hauling work) between February 23, 1981 and March 31, 1981. Before that time when B & S had received similar invoices it had promptly paid them to Terry Trucking. On this occasion, Yates and Broderius decided not to pay the current invoices to Terry Trucking but rather to set them off against the monies which B & S had loaned to Terry Trucking in the spring and summer of 1980. Whether the above-described set-off transaction was permissible is at the heart of the dispute in the case.

Around March 27, 1981, Terry Brothers repossessed trucks, equipment, etc. subject to its security interest from Terry Trucking. First National Bank of St. Paul liquidated the accounts receivable, contract rights, and other goods subject to its security interest between March 27, 1981 and December 18, 1981.

The Bank assigned its security interest to Broderius on August 25, 1981, for valuable consideration.

The remaining balance owed by Terry to First National Bank after the application of the accounts receivable proceeds was $59,122.28. Pursuant to the personal guarantees they had given the Bank for the line of credit, May paid $11,800.00; Yates paid $19,707.43, and Broderius paid $27,787.00 of the sum. In August 1981, Broderius obtained a judgment against Terry Trucking in Ramsey County Court for approximately $27,000.00.

### C. The Respondent Employees.

In June 1979, Thomas Wydella, Dennis McCauley, and Kenneth Sipe, (the respondents) became employees of Terry Trucking. Their employment was terminated on March 27, 1981, and at that time each had vacation benefits due and unpaid. With late payment penalties provided under Minn.Stat. § 181.13 (1982) the claims totaled sums as follows: Wydella—$2,226.03; McCauley—$3,789.00; and Sipe—$4,357.35. Shortly after Terry ceased operations, the respondents met with Yates and orally demanded their vacation pay; on September 15, 1981, the respondents sent a letter demanding payment to Broderius. The respondents obtained a default judgment against Terry in the amount of their demands, including penalties and attorney fees. Each recovered $600.00 on this judgment from the sale of certain operating rights of Terry.

### D. The Trial Court Decision.

■ In the action by the respondent employees to recover vacation pay, the Ramsey County District Court, following a nonjury trial, concluded that: "The failure of B & S to pay the money due to Terry Trucking ... is a breach of the fiduciary obligations of Broderius and Yates;" and the set-off was a means for avoiding payment "contrary to past practices of the corporations," constituting an impermissible preference "by enhancing and favoring the financial position of B & S to the detriment of other creditors." In so concluding, the trial court relied on *Snyder Electric Co. v. Fleming,* 305 N.W.2d 863 (Minn.1981) for the proposition that:

> When the corporation is insolvent or on the verge of insolvency, its directors and officers become fiduciaries of the corporate assets for the benefit of creditors. As fiduciaries, directors and officers of an insolvent corporation cannot by reason of their special position treat themselves to a preference to other creditors in collecting a bona fide business debt.

Consequently, the trial court reversed the preferential transaction such that "the

assets so transferred are considered to be returned to Terry Trucking" and resurrected the corresponding debts of Terry Trucking to B & S. The trial court also concluded that the respondents are entitled to the vacation pay and thus ordered judgment against Terry Trucking, Inc. and appellants in the amount of this pay and the statutory penalties.

This appeal is on denial of appellants' motion for a new trial or altered findings and conclusions.

## ISSUE

Did the set-off of mutual debts between Terry and B & S constitute an impermissible preference and a breach of the fiduciary duties owed by Broderius and Yates to the injury of the respondent employees such that the employees are entitled to judgment against the appellants in the amount of vacation pay due?

## ANALYSIS

The appellants contend that the mutual debts between a creditor and an insolvent debtor are a proper subject for set-off and do not constitute an impermissible preference. The doctrine of equitable set-off has been recognized in Minnesota. *St. Paul & M Trust Co. v. Leck,* 57 Minn. 87, 58 N.W. 826 (1894). In *Leck,* a trustee who held the property of an insolvent bank in trust for creditors brought suit against a bank customer to collect on a promissory note due to the bank. The court allowed the customer to set-off a Certificate of Deposit against the note even though the certificate had not matured and indicated that insolvency affords sufficient ground for the application of the doctrine of equitable set-off:

> That the insolvency of a party against whom a set-off is claimed is a sufficient ground for the exercise of the jurisdiction of a court of equity in allowing a set-off in cases not provided for by law, or, in other words, that insolvency has long been recognized as a distinct equitable ground for set-off, cannot well be disputed.

■ The Federal Bankruptcy Act provides for set-offs of mutual debts, and a voluntary set-off before bankruptcy will be permitted. *Studley v. Boylston National Bank,* 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313 (1913); *Cumberland Glass Manufacturing Co. v. Charles DeWitt,* 237 U.S. 447, 35 S.Ct. 636, 54 L.Ed. 1042 (1915). In the *Cumberland* case the court said:

> While the operation of this privilege of set-off has the effect to pay one creditor more than another, it is a provision based upon the generally recognized right of mutual debtors, which has been enacted as part of the bankruptcy act, and when relied upon should be enforced by the court.

*Id.* at 455, 35 S.Ct. at 639 (citing *New York County Nat. Bank v. Massey,* 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380 (1904).

■ Not all set-offs are permissible. As the trial court concluded, the device of a set-off will not legitimatize an unlawful extension of benefits to corporate insiders. Respondents here received services while Terry was insolvent and secured their advantage by avoiding payment through a set-off transaction.

The Minnesota Supreme Court in *Snyder Electric Co. v. Fleming, Id.,* defined illegal preferences for corporate insiders:

> By 'preference' we here mean generally a transfer or incumbrance of corporate assets made while the corporation is insolvent or verges on insolvency, the effect of which is to enable the director or officer to recover a greater percentage of his debt than general creditors of the corporation with otherwise similarly secured interests.

The *Fleming* decision spelled out these additional principles:

■ 1. Proof of a preference does not depend on showing inadequate consideration or fraudulent intent. In *Swanson v. Tomlinson Lumber Mills,* 307 Minn. 180, 239 N.W.2d 216 (1976), cited in the *Fleming* case, the Supreme Court noted that the state of mind of corporate directors can be

disregarded in deciding whether they have unlawfully favored their own claims. The court said:

> It was held (in *Taylor v. Mitchell*, 80 Minn. 492, 83 N.W. 418 (1900)) that '... the right of the creditors does not depend upon fraud in fact, but upon the violation of the fiduciary relation of the directors.' The validity of such a transaction does not depend upon the presence of an actual fradulent intent, but the pertinent and controlling inquiry is, has there been a violation of the duty which the directors owed to all creditors of the corporation, and a disregard of the rule that directors cannot take advantage of their relationship to the corporation, and secure to themselves an advantage or preference over other creditors?

*Id.* 239 N.W.2d at 220.

■ 2. Corporate officers may take reimbursement for payment of current corporate debts, but not as here for prior, "antecedent" consideration.

■ 3. It is an impermissible preference for an insolvent corporation's officers to arrange payment favoring a debtor that claims secondary liability of the officers. Thus, Terry officers could not claim their set-off transaction was aimed at satisfaction of the Bank debt they guaranteed.

■ 4. It is the burden of corporate executives to show a payment was received in good faith and was not a preference. As the trial court observed, transactions of executives with their corporations, and transactions among commonly controlled corporations, "are to be regarded with skepticism by the courts and closely scrutinized." *Snyder Electric Co. v. Fleming, Id.* at 867.

■ In the instant case, it appears that Broderius and Yates breached the fiduciary duty owed to all creditors, and effected an impermissible set-off since knowing Terry was insolvent they authorized a transaction that reduced the debt owed B & S and thus enhanced the financial position of that company to the detriment of other creditors.

Neither bad faith nor fraud of appellants has been shown, but they failed to disprove occurrence of a transaction chosen to create for them an advantage, a set-off transaction that was a clear departure from ordinary business practices of the corporation.

Introducing an argument not presented to the trial court, appellants contend that funds paid to Terry in March 1981 would have been obtained by the Bank because of its secured claim. They contend their later payments to the Bank had the same effect as any payments Terry would have gotten in March. Citing cases referring to injury caused by a preference, they suggest respondents have to prove the set-off transaction caused non-payment of their wage claims. Furthermore, appellants contend, the employees failed to show why current return of funds to Terry should not be followed by payment on the secured claim of Broderius as an assignee of the Bank.

■ The burden of proof of corporate insiders is not met by speculation on events that may have occurred in the absence of a favored payment. Before March 27, 1981, Terry, while insolvent, was engaged in business. Its assets were not possessed by the secured creditor. It is sheer speculation to suggest how money it did not receive would have been used.

Further, the speculation of appellants rests on favor for the Bank. Broderius and Yates enlarged their duty to unsecured creditors when guaranteeing the Bank debt. As indicated in the discussion of *Snyder Electric Co. v. Fleming, Id.*, favored payments to the Bank during insolvency would have been no less suspect than direct favor taken by Broderius and Yates through the set-off transaction.

■ A current money judgment for respondents conforms to the principles set out in the *Fleming* case, *Id.* A preferential payment to corporate insiders may be attacked in a suit of the corporate creditor without dissolution proceedings or the action of a receiver. A preferential payment

may be reversed and the court may direct division of the payment for creditors.

As the trial court concluded, reversal of the preferential payment resurrects the claim of the corporate insiders. According to the *Fleming* decision, *Id.*, the courts exercise equitable powers in deciding how to fairly distribute the restored corporate asset, subject only to a maximum benefit for the corporate insiders equal to their pro rata share.

Here equity favors the judgments awarded by the trial court, totaling $8,572.38. Among unsecured creditors the claims of respondents would be preferred due to the statutory lien for wages under Minn.Stat. § 514.59 (1982). That lien has priority over a $27,000 judgment obtained by appellant Broderius in August 1981. Principles of equity prevail over the security interest claimed by appellant Broderius as an assignee of the Bank. Minn.Stat. § 336.1–103.

### DECISION

A preferential benefit taken by appellants from Terry Trucking, Inc. must be restored to the corporation and equity requires full payment of the wage claims of corporation employees.

We affirm the judgment of the trial court.