In re METROPOLITAN COSMETIC AND RECONSTRUCTIVE SURGICAL CLINIC, P.A., Debtor.

NORTHERN BANK, Plaintiff,

v.

METROPOLITAN COSMETIC AND RECONSTRUCTIVE SURGICAL CLINIC, P.A., Dr. Allen W. Moberg, Habinger, Inc., Gerald F. Salfer, Richard H. Schueneman, Valley National Bank, First National Bank of Mankato, American State Bank, Metro State Bank of St. Paul, Merchant State Bank, J. Doe, M. Roe, and XYZ Corp., Inc., Defendants.

Bankruptcy No. 3–86–3007.
Adv. No. 3–88–126.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Feb. 13, 1990.

186

Peter Stein, St. Paul, Minn., for plaintiff.

Thomas Lallier, Minneapolis, Minn., for trustee.

Donald Jon Hoiland, Minneapolis, Minn., for Habinger.

Thomas Heffelfinger, Minneapolis, Minn., for Moberg.

## ORDER GRANTING
## SUMMARY JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter is before the Court on cross-motions for summary judgment by Defendants Metropolitan Cosmetic and Reconstructive Surgical Clinic, P.A. (Metropolitan or Debtor), Dr. Allen W. Moberg, and Habinger, Inc., on certain cross-claims pleaded in the adversary proceeding by Metropolitan. Appearances are as noted in the

record at hearing on December 12, 1989. Based on the motions, affidavits and memoranda, along with arguments of counsel, the Court, now being fully advised in the matter, hereby makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

This adversary proceeding was commenced by Northern Bank for determination and prioritization of interests in certain property of the Debtor. At issue here, however, are cross-motions for summary judgment on certain cross-claims filed by Metropolitan against Dr. Allen W. Moberg, its president and sole-shareholder, and against Defendant Habinger, Inc.

One of the cross-claims at issue involves a condominium the Debtor purchased in 1985 for the benefit of Moberg. The purchase money was apparently obtained from the proceeds of a loan from Northern Bank taken earlier by Metropolitan, ostensibly for the purchase of medical equipment. A mortgage was later placed on the property, in part for the benefit of Metropolitan, by Moberg in favor of Habinger, which subsequently foreclosed it. The trustee seeks: imposition of constructive trust for the Debtor on whatever interest Moberg otherwise has in the property; determination that Habinger's mortgage was improperly foreclosed upon; and, determination that the mortgage has been either wholly or partially satisfied.

A second cross-claim at issue involves post-petition payments received by Habinger from the Debtor while a debtor-in-possession. Metropolitan filed for relief under Chapter 11 on November 7, 1986. It operated under control of Moberg until September 14, 1988, when a trustee was appointed. The case was subsequently converted to a case under Chapter 7 on January 11, 1989.

While Moberg controlled the Debtor in Chapter 11, Metropolitan transferred to Habinger a total of $53,875.00 in payment on various long-term prepetition personal property "leases" between the parties. The trustee seeks: determination that the "leases" are disguised financing devices,

resulting in Habinger's status as a secured creditor; determination that the post-petition payments were unauthorized transfers in payment of prepetition debt; and, judgment, allowing the trustee to avoid the payments under 11 U.S.C. § 549(a)(2)(B), and to recover them under 11 U.S.C. § 550(a).

The third cross-claim at issue for which summary judgment is sought, is a preference claim based on a prepetition transfer to Habinger of $3,000.00.

## II.

■ The trustee argues that Moberg wrongfully diverted corporate assets for his own benefit in the condominium transaction by using proceeds of a loan to the Debtor originally ear-marked for equipment purchases. However, the transaction was compensation in lieu of salary.

The trustee asserts that "Moberg, as the sole shareholder of the corporation, acted in a fiduciary capacity for the benefit of the corporation." (Trustee's Brief, p. 3). The trustee cites no authority for that proposition. Ordinarily, *officers* and *directors* are fiduciaries to their corporation for the benefit of its shareholders. Here, Moberg is the *sole* shareholder. Even as an officer, he could hardly be said to be a fiduciary for his own benefit as shareholder.

■ The Minnesota Supreme Court has held officers and directors to be fiduciaries for the benefit of a corporation's creditors, but only when the corporation is nearly or actually insolvent. Even then, officers and directors are fiduciaries with respect to creditors under Minnesota law, only to the limited extent that they are prohibited from securing for themselves, as creditors, a preference over other creditors. *See: Snyder Electric Co. v. Fleming,* 305 N.W.2d 863 (Minn.1981); *Farmers Co–Operative Assn. of Bertha, Minn. v. Kotz,* 222 Minn. 153, 23 N.W.2d 576 (1946); *Honn v. Coin & Stamp Gallery,* 407 N.W.2d 419 (Minn. Ct.App.1987); and *B & S Rigging & Erection, Inc. v. Wydella,* 353 N.W.2d 163 (Minn.Ct.App.1984).

There has been no showing that the Debtor was insolvent at the time of the transfer. But even if it was, the trustee has not shown that Moberg received a preference in the transaction, which was in lieu of salary.

■ Because no fiduciary relationship, or breach, has been shown in connection with Moberg's acquisition of the condominium, the trustee has failed to establish an interest in Moberg's interest in the property, if any, by constructive trust.[1] Accordingly, the trustee's arguments regarding Habinger's mortgage and its foreclosure are moot.

### III.

■ While Moberg was in control of the Debtor during the pendency of its Chapter 11 case, he caused the Debtor to pay Habinger a total $53,875.00 on various prepetition long-term personal property "leases". These arrangements were clearly disguised financing devices.[2] Accordingly, Habinger was, at filing, a prepetition creditor of the Debtor, not a lessor. *See: In re Fashion Optical, Ltd.*, 653 F.2d 1385 (10th Cir.1981); *In re Breece*, 58 B.R. 379 (Bankr.N.D.Okla.1986). Habinger argues that present determination of its status cannot, or should not, now be used to allow the trustee to recover payments apparently authorized at the time they were made and received in good-faith as lease payments.[3]

Section 549(a)(2)(B) provides that a trustee may avoid transfers that are not authorized by either the Code or the court. Since the Court authorized none of the post-petition payments in dispute, the only relevant inquiry is whether the Code authorized them. The relevant Code provisions are 11 U.S.C. §§ 1108 and 363(c)(1). The latter provides:

> If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203, or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

Under § 363(c)(1), a debtor-in-possession who is authorized by § 1108 to operate the debtor's business, is authorized to make expenditures "in the ordinary course" of operation without notice, hearing, or order of the court.

The term "ordinary course" is not defined, but presumably it means something less than what otherwise might be ordinary course for a nondebtor. A good case can be made for the proposition that ordinary course includes only those payments of ordinary day-to-day operating expenses that, while necessary, are relatively insignificant; and, for which the requirement of prior Court approval on notice and hearing, would unduly burden the Court and the debtor. *See: Lopa v. Selgar Realty Corp. (In re Selgar Realty Corp.)*, 85 B.R. 235 (Bankr.E.D.N.Y.1988).

■ While the post-petition leasing of property necessary to the operation of a

---

1. Three elements are necessary to a constructive trust. They are: 1) a fiduciary relationship; 2) breach of the fiduciary relationship; and 3) damages. *Dietz v. Dietz*, 244 Minn. 330, 70 N.W.2d 281 (1955).

2. *See:* Affidavit of Timothy Moratzka, dated October 20, 1989, and filed October 26, 1989, at p. 2, paragraph 7, for the undisputed attributes of the controlling documents.

3. The trustee, with the consent of Habinger, has liquidated the collateral and holds the proceeds in the approximate amount of $10,000.00. Habinger claims that some of the collateral had been converted by Moberg prior to, and perhaps during pendency of, the Chapter 11 case. However, the trustee claims to have marshalled and accounted for all of the collateral, except a computer, printer, and a software package. In any event, the right of the Chapter 7 trustee to avoid post-petition transfers is not diminished by pre-or-post-petition wrongful conversion of collateral by the Debtor's principal. The question is whether post-petition transfers to the creditor were authorized. If so, they can be retained regardless of present state of collateral. If not, then they are subject to avoidance, again without regard to present state of collateral. Otherwise, §§ 507 and 726 priority and distribution interests are burdened with a loss, the risk of which was always with the secured creditor who failed to obtain adequate protection or possession of its property.

debtor's business can be in the ordinary course for purposes of § 363(c)(1), post-petition payment on unexpired prepetition long-term personal property leases is not. The fact that unexpired prepetition leases, including long-term personal property leases, are extensively covered in § 365, supports that conclusion.

Section 365 does not require that post-petition payments be made on unexpired personal property leases prior to their assumption.[4] Furthermore, upon rejection of a lease, a lessor of personal property is entitled to an administrative expense equal to the value to the estate of the post-petition use of the property by the Debtor. That might be less than the payments otherwise required under the lease.

Perhaps the strongest indication that post-petition payments on unexpired prepetition personal property leases are not authorized by § 363(c)(1), is the potential for occurrence of exactly what happened here if they were. These are not true leases. Nearly, $54,000.00 has been paid post-petition on prepetition debt. Absent a hearing on notice for approval of payment or assumption, interested parties to the bankruptcy case do not ordinarily have a reasonable opportunity to review and examine the underlying transaction, toward the protection of their interests.

Ordinarily, only the debtor-in-possession and lessor are privy to the transaction documents. Furthermore, absent notice and hearing, creditors usually have no reasonable means of knowing whether such payments are either contemplated or being made. Without notice and hearing, nothing of record reasonably gives prepetition creditors the necessary information that

would provide the basis or opportunity for objection to payments.

It cannot be said that these payments are relatively insignificant, or that the requirement for approval by the court would be unnecessarily burdensome to either the court or a debtor. Approval on notice and hearing is needed, firstly, to afford interested parties the opportunity to be heard; and, secondly, to protect the parties to the proposed post-petition transfers by the court's prior approval, should the transactions later be questioned.[5]

Post-petition payment of prepetition debt is not authorized by § 363(c)(1). The fact that such payment might actually reduce an allowed secured claim, thereby creating or increasing equity in property of the estate, does not legitimize the payment, at least when made from other than the recipient's cash collateral.

 Unsecured cash, not necessary for post-petition ordinary operating expenses is, absent court order, subject to §§ 507 and 726 priority and distribution provisions. Such cash is not properly available for payment of prepetition debt, secured or unsecured under 11 U.S.C. § 363(c)(1). To hold otherwise, would allow some claimants to improve their prepetition positions at the expense and prejudice of §§ 507 and 726 interests, without notice and hearing. This is true even where post-petition cash payments would create or increase equity in property of the estate. Ordinarily, cash is the most desirable form of property in a debtor's estate. Converting it to an equity position potentially diminishes value and creates risk for creditors.

---

4. Of course, a court can properly authorize payments to be made in connection with a debtor's request on stipulation with the lessor, or on a lessor's motion pursuant to § 365(d)(2) to limit the time for assumption.

5. Habinger relies heavily on *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 67 B.R. 899 (Bankr.E.D.Tenn.1986) in arguing that it would be fundamentally unfair to allow the trustee to now avoid payments mistakenly made. *Chattanooga* involved payments made during pendency of the case, both pre- and-post confirmation, to a creditor on what

was thought to be a prepetition secured claim. Upon ultimate conversion to Chapter 7, the trustee discovered that the security interest had not been perfected, and sought to avoid the post-petition payments under § 549(a)(2)(B). The Court refused to allow the trustee to avoid the post-petition transfers, but because the payments had been authorized—first by an order approving an adequate protection stipulation early in the case, and then by the confirmation order approving a plan that treated the creditor as secured.

None of the post-petition payments received by Habinger was its cash collateral. The payments were made from unsecured cash and, in light of its creditor status, could only have been applied toward either satisfaction of its prepetition debt or adequate protection of its interest. None of the payments was authorized by the Code or the Court. Neither the nature nor allowed amount of Habinger's claim was ever determined prior to this proceeding. The Court was not asked to, and did not, approve any adequate protection payments to Habinger. Payment of adequate protection entitlement is not authorized until it is requested and approved by the court on notice and hearing.

Because the post-petition payments to Habinger in the amount of $53,875.00 were unauthorized and prejudicial to the estate, the trustee is entitled to avoid them under § 549(a)(2)(B), and he is entitled to recover that amount from Habinger pursuant to § 550(a).

### IV.

The trustee seeks summary judgment on a claim of preferential transfer by the Debtor to Habinger in the amount of $3,000.00 within 90 days prior to the filing of the petition. However, the claim of preference is wholly unsubstantiated and summary judgment must be denied.

### V.

Based on the foregoing findings, conclusions and reasoning, the Court hereby orders:

1. Defendants Dr. Allen W. Moberg and Habinger, Inc., are entitled to summary judgment determining that the bankruptcy estate of Metropolitan Cosmetic and Reconstructive Surgical Clinic, P.A., has no interest in that certain condominium legally described as: Apartment No. 209 and Apartment No. 4, all in Apartment Ownership Number 61, Lochmoor II, a Condominium, Hennepin County, Minnesota.

2. Defendant Metropolitan Cosmetic and Reconstructive Surgical Clinic, P.A., is entitled to avoid post-petition payments made to Defendant Habinger, Inc., in the amount of $53,875.00 pursuant to 11 U.S.C. § 549(a)(2)(B); and is entitled to recover the payments under 11 U.S.C. § 550(a), thereby entitling the Debtor to judgment against Defendant Habinger, Inc., in the amount of $53,875.00.

3. The Debtor's motion for summary judgment against Defendant Habinger, Inc., on its claim of prepetition preferential transfer in the amount of $3,000.00 is denied.

Let Judgment Be Entered Accordingly on Paragraphs 1 and 2 of this Order.